## JOHN L. SMITH *v*. W. A. SPARKMAN.

1. SALES.  *What must be done by the seller.*

    The rule in regard to sales, that everything which the seller has to do must be done before a sale becomes absolute, should be understood as meaning that everything must be performed which, by the contract, is required as a condition precedent to the sale. The seller may engage to do something in respect of the property, before it passes to the buyer, which the parties do not mean to be essential, and which need not be done in order to render the sale absolute.

2. SAME.  *Compliance with statute of frauds not sufficient.*

    A contract of sale may fulfill the requirements of the statute of frauds, and yet not be sufficiently perfect to transfer property in a thing from one person to another.

3. SAME.  *Executory contract.  Case in judgment.*

    On November 27, 1875, Sparkman "bought of Lewis five bales of cotton, weighing 480 pounds each, at 11 cents per pound," as evidenced by a memorandum in writing, signed by the latter. At that time L. had no cotton baled, or even ginned, but had enough to make five bales picked out and in a house on his place. It was agreed that L. should haul the seed-cotton to M.'s gin, and, after it was ginned and packed, should haul the bales to Canton. After L. had hauled a portion of the cotton to the gin, and had three bales packed, Smith sued out an attachment against him, and caused it to be levied on the three bales at the gin, and the seed-cotton which had not been moved from L.'s house. Sparkman filed a claimant's affidavit in the suit, and an issue was formed between him and Smith. The verdict was for the claimant. *Held*, that the contract between Lewis and Sparkman was executory, and the property in the cotton had not passed to Sparkman when the attachment was levied.

ERROR to the Circuit Court of Leake County.

Hon. A. G. MAYERS, Judge.

John L. Smith, the plaintiff, sued out an attachment against J. R. Lewis, and had it levied upon five bales of cotton. When attached, a part of the cotton was at the gin

of one McDonald, in bales, and a part at the residence of Lewis, and in the seed. W. A. Sparkman, the defendant in error, filed an affidavit in the suit, claiming the five bales of cotton. An issue was formed between Smith, the plaintiff, and Sparkman, the claimant. The jury gave a verdict for the claimant. The other facts appear in the opinion of the court.

*Raymond Reid*, for the plaintiff in error.

The alleged sale of the cotton was invalid. It is claimed that the sale was made on November 27, 1875. No cotton was then weighed, or set apart, or delivered, and none was present. But the cotton was not ginned or baled at that time, and was not taken to the gin until December 14, 1875. At the time of the alleged sale, Lewis' whole crop was in bulk at his house, except about 500 pounds, then unpicked, in the field; and no part of such cotton was weighed, set apart, or delivered to Sparkman. There was no valid sale. Story on Sales, sec. 296, and note 1; 8 Geo. 353; 41 Miss. 358; 2 Kent, 640, and note *a*.

*Joseph D. Eads*, for the defendant in error.

The contract between Sparkman and Lewis was complete, the proposition to sell accepted, and the price and manner of payment were agreed upon. A contract for sale and purchase is an agreement for the transmission of property from one to another, in consideration of a payment made, or intended to be made; and where such a contract for a specific commodity, *in esse* and susceptible of immediate delivery, is made, the property is immediately changed, though no delivery has taken place. *Ingersoll* v. *Kendall*, 13 Smed. & M. 611; *Jordan* v. *Harris & Weeks*, 31 Miss. 258. It is not the delivery of the property, or payment of the price, which constitutes the sale; the sale is complete as soon as the vendee says, "I will give the price demanded," and the vendor replies, "I will take it." 13 Smed. & M. 611.

SIMRALL, C. J., delivered the opinion of the court.

The only question that need be considered is whether the sale of the five bales of cotton, by Lewis to Sparkman, was

complete so as to vest the property in Sparkman at the time the attachment was levied.   At the time of the sale, November 27, 1875, the cotton in contestation was in bulk in a house on the premises occupied by Lewis.   He was to haul the seed-cotton to McDonald's gin, and, after it was ginned and packed, haul the bales to Canton.

The written memorandum is in these words :

"W.  A.  Sparkman bought of J. R. Lewis five bales of cotton, weighing 480 lbs. each, at 11 cts. per lb., to wit, 2400 lbs., $264.00.
"Rec'd payment in full, 27 Nov., 1875.
(Signed)                                        "J. R. LEWIS."

The statute of frauds allows no contract for the sale of goods, * * ` * etc., to be valid, for a price above $50, unless the buyer shall receive part of the property, or shall pay or receive part of the price, or unless some note or memorandum, in writing, of the bargain be made and signed, etc.   Code, sec. 2895.   This section was adopted first in this state in 1857, and was borrowed from the English statute.

It has been well settled that the term "contract," as used in the statute, includes contracts in which the sale is completed by a transfer of the property to the buyer, and the price to the seller ; and also executory contracts for the future delivery of property existing in the same form in which it is to be delivered.   Story on Sales, sec. 259, and note.   The statute invalidates a large class of contracts which were good at common law.   Independent of the statute, the property in a specific chattel may be transmitted from one person to another without delivery, and without payment of the price.   If a time is named for the payment, reciprocal actions will lie by the buyer for the thing, and by the seller for the price.   Chitty on Con. 518 ; *Dixon* v. *Yates*, 5 Barn. & Ald. 313, 340. In *Stamps* v. *Bush*, 7 How. 266, decided before the adoption of the section of the English statute here, commenting on the requisites of a sale complete by delivery, the court sanctioned the rule as stated by Chancellor Kent (2 Com. 492), viz. :

" Where the terms of the sale are agreed on, and the bargain is struck, and *everything* that the seller has to do is complete, the contract of sale becomes absolute without actual payment and delivery, and the property vests in the buyer."

The author must be understood as meaning that everything must be done which by the contract is required as a condition precedent to the sale. For there is a large class of cases, especially in the later reports, which hold that the seller may engage to do something in respect of the property which the parties do not mean to be essential before the property passes. In the case cited, the " hauling of the cotton to the river-bank by Stamps " was said not to be a condition of that sort. The rolling from the gin-house, and separation of the bales of cotton (the subject of the sale) from the common mass, the weighing and calculation of the price, were considered as perfecting the delivery.

The hauling of the bales to the river-landing might properly have been regarded as a service to be rendered by the seller as a bailee for Bush, the buyer.

In *McKay* v. *Hamblin*, 44 Miss. 474, a similar service to be rendered, viz., " to haul the cotton to Canton when required to do so," was esteemed as an act to be done by the seller as bailee, the circumstances showing that there had been a delivery (constructive), and that the commodity was left in the custody of the seller as bailee.

*Jordan* v. *Harris*, 31 Miss. 258, is another illustration of whether the act to be done must be performed before the property is vested in the buyer. " A bargain was struck for all the cotton that Young had in Slaughter's gin, at 9 cents per pound (part of the price was paid down). Slaughter was directed by Young to deliver the cotton to Jordan; credit for the balance was to be given on Young's indebtedness after the cotton was ginned and weighed; the sale was complete because ' the weighing * * * was to be done merely to ascertain the balance for which Young was to receive credit on his indebtedness.' "

Much depends on whether all has been done about the prop-

erty which the parties intended, and whether the commodity was *in esse* at the date of the contract, in condition to be delivered. These considerations furnish valuable tests to determine whether the contract is an absolute sale, or executory.

The contract between Lewis and Sparkman meets the demands of the statute of frauds. But it was not a " contract of sale " perfect to transmit the property in the cotton from one to the other. The contract was for five bales of cotton, of a certain weight. At that time Lewis did not have a bale of cotton, so far as shown by testimony. He did have a bulk of cotton in the seed — more than enough, when ginned and baled, to fulfill his contract. It is very probable that the parties had reference to cotton to come from Lewis' crop of that year, most of which was then gathered. But they intended that Lewis should put the cotton in merchantable shape, by ginning and baling.

Sparkman did not bargain for seed-cotton. At the time of the contract there was no identification and setting apart of any particular bales, as those bought by Sparkman. It is quite clear that the contract, in the light of the circumstances, was executory, and that the property in the cotton was not transmitted to Sparkman by delivery before the attachment of Smith was levied.

We cannot review the instructions, because no objection to them was made when given to the jury, nor is any complaint made of them in the motion for a new trial.

We think, however, that the verdict is against the testimony, and for that reason must be set aside, and a *venire de novo* awarded.