[S. F. No. 5220. In Bank.—July 1, 1911.]

# F. R. WALTI et al., Appellants, v. MARKS GABA et al., Respondents.

AGREEMENT FOR SALE OF CLIPPED AND UNCLIPPED WOOL—ENTIRE CONTRACT—DELIVERY.—The plaintiffs, who were the owners of a band of sheep located near Kings City, entered into a written contract which stated that they "have this day sold" to the defendants "all of our spring wool clip of 1906 at eighteen cent per pound, also the fall clip wool of 1905 at fourteen cent per pound. The fall wool, which is stored . . . at San Francisco, the spring wool to be delivered at Kings City depot in consideration thereof we accepted a deposit of two hundred and fifty dollars part of payment of said sale, the balance to be paid on the delivery of wool." At the time the contract was executed the spring wool was on the bodies of the sheep. *Held,* that the contract was not one of present sale, but constituted a mere agreement to sell and buy; that the contract was entire, and did not pass title to any of the wool to the purchasers, and that the latter were under no obligation to pay for any of the wool until the delivery to them of all of it.

ID.—WORDS "BOUGHT" AND "SOLD" DO NOT ALWAYS IMPORT PRESENT SALE.—The use of the word "sold" or the word "bought" does not always import a present sale. Such words are frequently used where the parties in fact intend only an agreement to sell.

ID.—PASSING OF TITLE—PRECEDENT ACTS TO BE DONE BY VENDOR.—Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or into a deliverable state, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of property.

ID.—VENDORS TO CARE FOR AND SHEAR SHEEP—WEIGHING TO ASCERTAIN PRICE.—Under such contract, and the conditions existing at the time of its execution, it is clear that the parties intended that the owners of the sheep should care for them until the proper time for shearing the spring wool, should shear it and put it in a condition for delivery, transport it to Kings City, and there deliver it. Incident to this delivery, it would also be necessary to weigh it to ascertain the price to be paid. These circumstances are indications that the title did not pass.

APPEAL from an order of the Superior Court of Santa Cruz County refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Cassin & Lucas, for Appellants.

Joseph H. Skirm, for Respondents.

THE COURT.—This case was ordered heard in this court after decision by the district court of appeal of the first district.

The opinion filed in that court, prepared by Hall, J., was as follows:

"This is an appeal from an order denying plaintiffs' motion for a new trial.

"On the 2nd day of April, 1906, plaintiffs were the owners of thirty-nine sacks of wool of the fall clip of 1905, then stored with the Kron Tanning Company in San Francisco, and a band of sheep located on a ranch at Bitter Water, near Kings City. On said day plaintiffs and defendants entered into a written contract as follows:

" 'TULLY RANCH, BITTER WATER, April 2, 1906.

" 'I, the undersigned, have this day sold to Gaba-Magidson all· of our spring wool clip of 1906 at eighteen (18) cent per lb, also the fall clip wool of 1905 at fourteen (14) cent per lb. The fall wool, which is stored at the Kron Tanning Co. office, at San Francisco, the spring wool to be delivered at · King City depot in consideration thereof we accepted a deposit of two hundred and fifty (250) dollars part payment of said sale, the balance to be paid on the delivery of wool.

" '(Signed.) , WALTI AND BOURDIEU, per Ed. Bourdieu.' "

"The two hundred and fifty dollars referred to in the contract was paid to plaintiffs by defendants upon the execution of the contract. At this time the wool described as the spring clip of 1906 was growing on the bodies of the sheep running on the ranch at Bitter Water, and the fall wool of 1905 was stored with the Kron Tanning Company in San Francisco, where it remained until the conflagration of April 18, 1906, when it was destroyed. In May, 1906, after the sheep had been sheared, plaintiffs tendered the spring clip of wool at Kings City to defendants and demanded payment for all the wool, both that then tendered and the wool that had been destroyed at the Kron Tanning Company's warehouse on April 18th, at the stipulated price. Defendants refused to pay for the destroyed wool, but offered to accept and pay for the spring wool at eighteen cents per pound, less the $250 paid on account. This offer plaintiffs refused, and insisted on payment for all the wool, less the $250 paid on account, and defendants refusing to accept the tendered wool on these terms, plaintiffs brought suit for $2,195.34, being the price of all the wool, both that which had been destroyed and the spring clip of 1906, less $250 paid at the execution of the contract.

"Defendants answered and sought to recover the $250 paid to plaintiffs.

"Appellants' theory was and is that the transaction had between them and defendants was an absolute sale, and that title passed to all the wool involved at the time the memorandum was signed by Walti and Bourdieu and the $250 paid by Gaba and Magidson.

"If this theory of the case be correct it is certain that defendants should bear the loss of the destroyed wool and should pay for the entire amount. But the respondents contend that

the transaction constituted an agreement to sell and to buy only, and that no title passed at the execution of the contract or would pass until delivery of the wool.

"The court adopted respondents' theory of the case, and found in accordance with their pleadings: 'That the said plaintiffs did not sell and the said defendants did not buy any wool by the said agreement in writing, but the said plaintiffs agreed to sell and the said defendants agreed to buy the wool mentioned in the said agreement in writing upon the terms and conditions therein set forth and contained, and that the said agreement in writing constituted and was one entire contract by which the said defendants agreed to pay the balance of the price of all the wool therein mentioned upon the delivery of all the wool therein mentioned by the said plaintiffs, to them, the said defendants.' It is the correctness of this finding that is attacked.

"We are of the opinion that the interpretation adopted by the court of the transaction is sufficiently supported by the writing itself and the evidence as to the circumstances and conditions surrounding its execution.

"It is true that the writing states that 'I have this day sold, etc.,' but the use of the word sold or the word bought does not always import a present sale, but such words are frequently used where the parties in fact intend only an agreement to sell. (*Blackwood* v. *Cutting Packing Co.,* 76 Cal. 218, [9 Am. St. Rep. 199, 18 Pac. 248] ; *Anderson* v. *Read,* 106 N. Y. 344, [13 N. E. 292] ; *McLaughlin* v. *Piatti,* 27 Cal. 458; *Elgee Cotton Cases,* 22 Wall (U. S.) 180, [22 L. Ed. 863].)

"If the contract now under discussion had only referred to spring wool, which was still growing on the backs of the sheep at the execution of the contract, and had then still to be fully grown, sheared and delivered at Kings City, by appellants, there could hardly be room for discussion as to the fact that no title passed at the execution of the contract. The rule laid down by Benjamin on Sales, and approved in *Blackwood* v. *Cutting Packing Co.,* and in *Elgee Cotton Cases,* is, 'Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them, or, as it is sometimes worded, into a deliverable state, the performance of those things shall, in the absence of the circumstances indicating a contrary in-

tention, be taken to be a condition precedent to the vesting of property.'

"In the case at bar it is perfectly clear from the conditions existing when the writing was executed that the parties intended that the appellants, the owners of the sheep, should care for the sheep until the proper time for shearing the spring wool, should then shear it and put it in a condition for delivery, transport it to Kings City and there deliver it. Incident to this delivery it would also be necessary to weigh it to ascertain the price to be paid, and this is laid down by Benjamin, and approved in the *Blackwood* case and in the *Elgee Cotton Cases,* as another indication that the title has not passed.

"If the sheep had been destroyed by act of God before the spring wool had been sheared, and the wool thus lost, it would hardly be contended by any one that the buyer should bear the loss of the wool, or could be compelled to pay for it. Yet this would be the case if title had vested in him. He would not bear such loss because the title to the wool had not vested in him, and by the terms of the contract was not intended to vest in him until it had been sheared and delivered at Kings City. In both *Blackwood* v. *Cutting Packing Co.,* and the *Elgee Cotton Cases,* the pivotal point was as to whether title had passed to the buyer upon the execution of the contract.

"In the *Elgee Cotton Cases* a part payment had been made, and the contract provided that the cotton 'from this date is at the risk of Mr. Lobdell' (the buyer). Yet, as in the Blackwood case, the court held that no title had passed, in accordance with the rule above quoted from Benjamin on Sales. In neither case can the essential facts be distinguished from the facts in the case at bar so far as the sale of the spring wool is concerned, and so far as the contract related to the spring wool it is perfectly plain that no title passed at the execution of the contract.

"This brings us to a more particular consideration of the contract as relating to the fall wool.

"The court found that the agreement constituted one entire contract, by which the defendants agreed to pay the balance of the price of all the wool therein mentioned upon the delivery of all the wool mentioned.

"In this connection we note that appellants in their brief

claim that the fall wool was delivered. The record does not support this claim. It is true that Mr. Bourdieu did testify that Mr. Gaba, who acted for defendants, agreed to go to San Francisco the next day after making of the contract, and take and pay for the wool at the warehouse. Mr. Gaba, however, denied this, and testified that nothing was said about delivery except as contained in the writing. In support of the action of the trial court we must accept this as true. Appellants did notify the warehouseman to deliver the wool to defendants on their paying for it at fourteen cents per pound, but no order on the warehouseman was given to defendants, and no notice given to defendants of the instructions sent to the warehouseman, and defendants never did in any way accept delivery of or control over the wool in the warehouse.

"The court was justified in finding that the contract was entire. The circumstances under which the contract was executed as well as the wording of the contract indicate that it was an entire contract for the purchase of all the wool, both spring wool and fall wool. Under the contract the sellers could not compel acceptance and payment for the fall wool, unless they also delivered the spring wool. Neither could they compel payment for the spring wool unless they delivered the fall wool. A payment of $250 was made at the execution of the contract. This was not a payment on the purchase price of the spring wool alone, neither was it a payment on the purchase price of the fall wool alone. It was a payment on the entire purchase price of all the wool. In the words of the contract it was 'a part payment of said sale,' not a part payment of said sales. The contract concludes with the words, 'the balance to be paid on delivery of wool.' These words indicate that the parties had in mind but one 'balance,' which would be the difference between the total purchase price and the $250 paid down. The language suggests but one more payment, the amount of which could only be ascertained or be due upon delivery of all the wool. The plaintiffs seem to have adopted this construction of the contract, for they made no demand for any payment until they tendered the spring wool. Further the evidence shows that defendants did not desire to purchase the fall wool at fourteen cents, as they considered it worth but thirteen or thirteen and one half cents per pound, while plaintiffs desired nineteen cents per pound for the spring wool, but

would not sell it for even that price unless they also sold the fall wool. Mr. Gaba testified that he could not get the spring wool unless he bought the fall wool with it. In support of the action of the trial court we must accept this as true. It thus appears that the inducement to the contract as made was the sale and purchase of the entire lot. In such case the contract is entire, and not severable (35 Cyc. 116).

"Upon the question of the entirety of the contract a case in all respects in point with the case at bar is the case of *Thompson and Petty* v. *Conover*, 30 N. J. L. 329. Conover agreed to sell to Petty ·all the corn he then had, about six hundred bushels, at sixty-five cents per bushel for the white, and sixty-three cents per bushel for the yellow. The white was delivered and accepted, but Petty without cause refused to accept the yellow. Conover then sued in trover to recover the white corn that had been delivered. It was held that the contract was entire, and that the seller could recover from the buyer the possession of the corn delivered as the buyer refused to accept the other corn.

"In *Pope* v. *Porter*, 102 N. Y. 368, [7 N. E. 304], the contract was as follows: 'Sold ·to the following named parties Scotch pig iron to arrive as specified below . . . 500 tons Coltness pig iron at 36 per ton for shipment to be due here in April next, 500 tons of Coulder pig iron at 34 per ton, for shipment to be due here in March next. Payable on arrival here by four months note indorsed by the above named parties with interest added at 6 per cent.'

"The seller did not deliver the Coulder iron which was due to arrive in March, but did deliver the Coltness iron which arrived later. This the buyer refused to accept, and· the seller sued for its price. It was held that the contract was entire, and that the seller having failed to deliver the part first to be delivered could not recover for the iron subsequently tendered.

"Other instances of contracts for the purchase of different articles at specified prices for each article, which were held to be entire and not severable contracts, are found in *Smith* v. *Lewis*, 40 Ind. 98; *Bruce* v.. *Pearson*, 3 Johns, (N. Y.) 534; *Pratt* v. *Frasier*, 72 S. C. 369, [51 S. E. 983].

"Because of the wording of the contract in the case at bar, the part payment to be credited on the entire purchase price, and balance to be paid on delivery of wool, as well as the cir-

cumstances in evidence concerning the sale of all or none of the wool, it is clear to us that the contract was entire.

"It is equally clear under the authorities hereinbefore cited (Benjamin on Sales, *Blackwood* v. *Cutting Packing Co., Elgee Cotton Cases*), that it was not intended to pass title to the spring wool, until it had been sheared and delivered at Kings City. As the contract was entire the court was justified in finding that it was not intended that title to the fall wool should pass until delivery of the spring wool. In other words, the court was justified in finding that the contract was not one of present sale, but an agreement to sell and deliver at a future time all the wool referred to. Before the time for delivery of all the wool had arrived the fall wool was destroyed while still in the hands of the seller."

This opinion correctly states the facts of the case, except as to two matters which are altogether immaterial here, viz.: there were only twenty-nine sacks of the fall wool instead of thirty-nine as stated in the opinion, and in the written agreement the word "of" occurred before the word "payment," the agreement reading "part of payment" instead of "part payment."

Upon further consideration of the legal questions presented by the facts, we are satisfied with the views expressed by the district court of appeal in the foregoing opinion, and adopt the same as the opinion of this court.

The order appealed from is affirmed.