[Civ. No. 4868. First Appellate District, Division One.—May 25, 1925.]

## AMERICAN FACTORS, LIMITED (a Corporation), Respondent, v. CHARLES EBENEZER GOSS et al., Appellants.

[1] SALES—APPROPRIATION OF GOODS TO BUYER—INTENT—ASSENT.— Appropriation of certain merchandise to the buyer under a contract of purchase cannot rest upon the mere intent of the seller, but must be manifested by acts, and must have the assent of the buyer as well as the seller.

[2] ID.—PLACING OF HAY IN BINS—RESERVATION OF CONTROL—USE IN FILLING OTHER ORDERS.—Under a contract for the sale of a given quantity of double-compressed hay f. o. b. a given steamship dock, the mere fact that the seller has double-compressed certain hay and put it into bins in the seller's warehouse, without notification to the buyer, does not of itself vest title in the buyer, where the seller still has such control of the hay that, even after it is put in such bins, he is at liberty to use it, and does use part of it in filling orders of other parties.

[3] ID.—SALE OF PART OF LOT OF HAY—PREPARATION FOR DELIVERY.— Where a quantity of hay is sold out of a larger lot, the title does not vest in the buyer while anything remains to be done by the seller in preparing the hay for delivery.

[4] ID.—DELIVERY F. O. B.—RISK OF LOSS PRIOR TO DELIVERY.—Where a contract for the sale of hay requires that it shall be double-compressed and shall be delivered f. o. b. a given steamship dock, until so delivered by the seller title does not vest in the buyer, in the absence of a contrary intent, and the hay is at the seller's risk until it is so delivered.

[5] ID.—INSUFFICIENT APPROPRIATION—EVIDENCE—FINDING—RISK OF LOSS.—In this action for the return of the purchase price of certain hay which was the subject of a contract of sale and purchase between plaintiffs and defendants, for which plaintiff had paid in full, but which was destroyed by fire while still in defendants' warehouse, the trial court properly found that, although certain hay in defendants' warehouse had been double-compressed by defendants and placed in bins, no hay had been appropriated to plaintiff so as to subject it to the risk of loss by fire.

---

(1) 35 Cyc., p. 296, n. 63, p. 297, n. 67, 73.    (2) 35 Cyc., p. 296, n. 60.    (3) 35 Cyc., p. 297, n. 67.    (4) 35 Cyc., p. 308, n. 68, 69. (5) 35 Cyc., p. 297, n. 73.

1.  See 24 R. C. L. 23-26; 22 Cal. Jur. 950.
3.  When title passes to goods sold from mass, note, 9 Ann. Cas. 26.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hankins & Hankins for Appellants.

Knight, Boland, Hutchinson & Christin and Donald Y. Campbell for Respondent.

TYLER, P. J.—Action for the return of the purchase price paid for certain hay which was destroyed by fire prior to actual delivery. The facts are as follows:

Hackfeld & Company, Limited, a corporation, engaged in the export business (predecessor of plaintiff herein), and defendants Chas. E. Goss & Son, a corporation, hay dealers of San Francisco, entered into a contract for the sale and purchase of some 800 tons of double-compressed No. 1 wheat hay at the price of $31 per ton.

Defendants owned a warehouse in San Francisco, and bought hay from the growers and resold the same to local buyers and also to wholesalers and exporters. As a part of their export business in handling hay they owned certain high-power presses, which were used for the rebaling or double-compressing of hay, the process being to unbale and break up the ordinary size bales as received from the growers, and then recompress or rebale the same under high compression, thereby reducing the size of each bale about one-half.

The object of this change was to permit of the export shipment of a greater quantity in a given sized space for the purpose of economy in shipment. Other than the decreasing of the size of the bales, nothing else was done to the hay. The plaintiff, American Factors, Limited (at the time of the transaction known as Hackfeld & Co.), were exporters, and in the conduct of their business purchased hay in San Francisco for sale in the Hawaiian Islands. About July 25, 1918, at San Francisco, plaintiff's predecessor, Hackfeld & Co., made the purchase in question. The hay was paid for in full according to the terms of the agreement of sale. The price included delivery f. o. b. at Matson Navigation Com-

pany's dock, when and as ordered by direction of plaintiff. The time of delivery was limited by the agreement to June 1, 1919, but at the expiration thereof, plaintiff not having ordered all of the hay purchased, the time for the delivery of the balance was extended by mutual consent. When partial deliveries aggregating some 500 tons had been made, the warehouse of defendants was destroyed by fire.

At this time there was approximately some 302 tons of hay not called for or delivered. Demand for delivery of said balance was thereupon made by plaintiff upon defendants, who refused to comply therewith, claiming that 189½ tons of the hay had been double-compressed and set aside for plaintiff and so entered in defendants' books. The balance of 112½ tons, so defendants claimed, had been likewise compressed and was in defendants' warehouse at the time of the fire, but had not actually and physically been set aside for plaintiff, and was more or less mixed with other hay.

On this 112½ tons defendants collected insurance, and so notified plaintiff, and prior to the commencement of this action they offered to pay the amount of this insurance money to plaintiff or to replace the hay. Plaintiff demanded delivery of the entire remaining 302 tons or the return of its purchase price, which demand was refused and this action followed. At the trial defendants contended that the intent of the parties was to make an actual sale of the hay, and not an agreement of sale, and that as they had prepared the same so as to have it ready for delivery upon the orders of plaintiff, title passed and the risk of loss or damage was upon plaintiff. In other words, defendants claimed a constructive delivery by reason of a segregation. Plaintiff denied that any segregation had ever been made in its favor of the whole or any part of the undelivered portion of the hay so as to distinguish it from other hay in defendant's warehouse, and further denied that any notice of segregation or identification was ever asserted by defendants until after the fire. It also claimed that defendants had agreed to assume all carrying charges, including storage and insurance, pending actual delivery, which was to be made f. o. b. at the Matson dock, and in consequence of which defendants must suffer the loss. The trial court found that defendants had agreed to assume the payment of the carry-

ing charges including insurance.  It further found that of the 302 tons of hay so undelivered, no part was ever segregated by defendants in their warehouse or anywhere else to the order of plaintiff with its knowledge or consent or at all.  It accordingly further found that no delivery had ever been made.

Judgment was thereupon rendered in favor of plaintiff for the sum of $11,610.17.  If there is any evidence in the record to sustain the finding that no segregation had ever been made all questions concerning the effect of the agreement with reference to storage charges and insurance become unimportant, as does also the further contention of appellant that no title passed until there was a delivery f. o. b. Matson dock under the rule laid down in *Lewis* v. *Farmers Grain etc. Co.*, 52 Cal. App. 211 [198 Pac. 426].  Upon this subject defendants offered testimony to show that the hay had been segregated in certain bins.  It further appeared, however, that some of this hay had been withdrawn by defendants to fill an order of the Hakalau Plantation Company, and that other hay was placed in the bins for the account of such company of the same character called for by the contract; and also that other hay had been withdrawn from the bins by defendants, which would indicate that the hay was deposited in the bins for the convenience of the defendants in the conduct of their export business, and that it was of a fluctuating character and under the control of defendants.  This evidence, in our opinion, was sufficient to support the finding that there was no such segregation as passed title in plaintiff.  The case thus presents the situation where the vendor of personal property was to put the article purchased into a deliverable state as a condition precedent to the passing of title and the vesting of the property in the vendee.

The learned trial judge, in ordering judgment for plaintiff, expressed his views in writing upon the law relating to this subject.  As we are of the opinion that his conclusion is correct, we hereby adopt it as part of our opinion.  It is as follows:

[1]  "The defendants claim that they so segregated the hay and appropriated it to the plaintiff's contract, that at the time of the fire the title was in the plaintiff, and the hay was at plaintiff's risk.  Appropriation cannot rest, however,

upon the mere intent of one party. Appropriation must be manifested by acts, and must have the assent of the buyer as well as the seller. I do not think that the evidence here indicates an actual appropriation of the property to the buyer with the buyer's assent.

[2] ''The mere fact that the hay was double-compressed and put into bins, without notification to the buyer, did not of itself vest title in the plaintiff. The defendants still had such control of the hay that even after it was put into bins, they were at liberty to use it in filling orders of other parties, while if the hay really belonged to the plaintiff, the application of it to other orders would have amounted to conversion by the defendants. The record shows that the defendants did in fact deliver to the Hakalau Plantation Company certain double-compressed hay from bins claimed to have contained hay appropriated exclusively to the plaintiff. The very fact that before the fire the defendants did so act indicates that they did not regard the hay as the actual property of the plaintiff.

''I am of the opinion that in reality the defendants merely agreed to sell plaintiff hay to be supplied as needed out of defendants' fluctuating stock. [3] And in general where a quantity of hay is sold out of a larger lot, the title does not vest in the buyer while anything remains to be done by the seller in preparing the goods for delivery. This principle of law is treated at some length, with a review of the earlier English and American authorities in *Messer* v. *Woodman,* 22 N. H. 172 [52 Am. Dec. 241].

''See, also: *Davis* v. *Hall,* 3 N. H. 382 [14 Am. Dec. 373]; *Lawry* v. *Ellis,* 85 Me. 500 [27 Atl. 518].

[4] ''After having been compressed, the hay had to be delivered free of charge at the dock of the Matson Navigation Company; and until it was so delivered by defendants, it is my view that title was not intended to vest, and that the hay was at the risk of the defendants.

''In *Smith* v. *Sparkman,* 55 Miss. 649 [30 Am. Rep. 537], there was a sale of five bales of cotton which at the time was in bulk in the seller's warehouse, and which he was to haul to a certain gin for packing, then from the gin to the town of Canton. Full payment was made in advance, as was done in the case at bar. A creditor of the seller levied an attachment on the cotton, when part of it was at the gin

and the rest still in the seller's warehouse. It was held that the title was still in the seller and the cotton subject to attachment by his creditor.

"So in *Davis* v. *Hall*, 3 N. H. 382 [14 Am. Dec. 373], a quantity of hay was sold from a lot in the seller's barn, to be weighed out of a certain mow whenever the buyer saw fit to call for it. In this case also the hay was fully paid for in advance. Before any delivery occurred, the seller died and his administrator refused to make delivery; whereupon the buyer brought an action in trover, claiming title in himself. The court held, however, that the title had not passed, and judgment therefore went in favor of the administrator.

[5] "In *Andrews* v. *Cheney*, 62 N. H. 404, we find a case closely parallel to the case at bar. There plaintiff had bought goods of the defendant and had paid for them in full. The plaintiff had selected the goods from samples, and defendant agreed to have the goods in stock in about two weeks. Within the stipulated time the goods were received by the defendant, and he then not only set them apart, but marked them with the plaintiff's name. The goods were, however, burned before the plaintiff called for them, and the question was whether the loss fell on the buyer or the seller. The court held that the goods were still the goods of the seller, saying:

" 'The defendant was not concluded by his selection. He might have sold or otherwise disposed of the particular articles set apart by him, and substituted others in their place. A contract of sale is not complete until the specific goods on which it is to operate are agreed upon. Until that is done, the contract is not a sale, but an agreement to sell goods of a particular description. It is performed on the part of the vendor by furnishing the goods which answer the description. If, as in the case of a sale by samples, the specific goods are not ascertained by the agreement, the property does not pass until an appropriation of the specific goods to the contract is made with the assent of both parties. If the plaintiff authorized the defendant to make the selection, the property immediately on the selection vested in the plaintiff. It not appearing that the plaintiff gave such authority, the goods at the time of the fire were the property of the defendant and their destruction was his loss.'

"This reasoning I believe to be sound and to justify judgment in the case at bar for the return of plaintiff's money, with interest.

                                "Walter Perry Johnson."

(See, also, *Turner, Kuhn and Fraser, Inc.,* v. *Jones,* 61 Cal. App. 732 [215 Pac. 1033].)

We do not consider it necessary to add anything to what the learned trial judge has said.

From the views expressed it follows that the judgment herein should be and it is affirmed.

Cashin, J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 24, 1925, and appellants' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 23, 1925.

All the Justices present concurred.