[Civ. No. 6454. First Appellate District, Division Two.—September 7, 1928.]

M. J. GRACCHI et al., Petitioners, v. J. M. FRIEDLANDER, etc., Respondent.

Athearn, Chandler & Farmer, Frank R. Devlin, Karl Brooks and Philip H. Angell for Petitioners.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and Donald A. Pearce, Deputy Commissioner of Corporations, for Respondent.

STURTEVANT, J.—This is an application for a writ of review against the respondent as commissioner of corporations of the state of California. The petitioners are co-partners, and are doing business under two fictitious names: (1) The California Fur Rabbit Association, and (2) The California Fur Rabbit Farms. They are engaged in selling

certain contracts. Each contract consists of two pieces of paper. One paper consists of three documents. The first one is an order for merchandise; the second is a promissory note; the third is a receipt for the first payment. The first and second documents are printed to receive the signature of the intending purchaser; the third document has printed thereon "The California Fur Rabbit Association," together with a blank line to be signed by the "sales representative." The second paper is an agency assignment and is printed to receive the signature of the intending purchaser. The goods ordered in the first document are described as "Three (3) Pedigreed (Blue Ribbon Strain) White Giant Does, Two (2) compartment breeding hutches." The same description is repeated in the agency appointment. The order recites "the title thereto shall remain with you." The receipt contains a covenant authorizing the vendors to sell any rabbit and to replace it. The agency appointment provides that the vendors shall have the control and possession and shall care for, supervise, inspect, and market said rabbits. It uses the expressions "deliver" and "redeliver," but no delivery or change of delivery is provided for except in one paragraph: "I reserve the right to cancel this agency at any time upon ninety (90) days' written notice to said Farms, and in the event of such cancellation I shall be entitled to redelivery, at the expiration of said ninety (90) days, of all my then existing rabbits and their increase and to hutches belonging to me, upon my payment to said Farms of any sums owing by me to them." The same document provides: "Said rabbits shall be labeled and tattooed." However, no one of the documents contains a blank describing any rabbit by label or tattoo or otherwise than we have noted above. The petition recites that the petitioners have ten acres and are engaged in breeding and raising rabbits.

 The manner of transacting business was that all of said documents were signed and executed at the same time. As all relate to the same matter they are to be taken together. (Civ. Code, sec. 1642; *Flinn & Treacy* v. *Mowry*, 131 Cal. 481 [63 Pac. 724, 1006]; *Cobb* v. *Doggett*, 142 Cal. 142 [75 Pac. 785]; *McAuliff* v. *McFadden*, 42 Cal. App. 505 [183 Pac. 870].)

■ The facts stated in the petition and in the exhibits attached thereto show that when a contract was sold there was no identification of any certain rabbit or of any certain hutch. Under these circumstances the transaction did not constitute a sale. The documents taken all together are not ambiguous as to when the title should pass. They show on their face that the title did not pass. Considered as a present sale many documents containing language more favorable to the vendors have been held wanting as constituting a present sale. In the case of *McLaughlin* v. *Piatti*, 27 Cal. 451, it was held that the document did not show a present sale of cattle, but that the transaction was executory. At page 463 the court said: "It is a fundamental principle pervading everywhere the doctrine of the sales of chattels that if goods be sold (while mingled with others) by number, weight, or measure, the sale is incomplete, and the title continues with the seller until the bargained property is separated and identified. The reason is that the sale cannot apply to any article until it is clearly designated and its identity ascertained. In the case under consideration it could not be said with certainty that any particular five hundred head of cattle belonged to Baker or to plaintiff as his assignee until a severance of that number from the herd from which they were to be taken. If a part of that herd had died, five hundred head surviving, the loss would neither in whole nor in part have fallen upon Baker." That rule has since been followed. (*Caruthers* v. *McGarvey*, 41 Cal. 15; *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212 [9 Am. St. Rep. 199, 18 Pac. 248]; *Walti* v. *Gaba*, 160 Cal. 324 [116 Pac. 963]; *Wanee* v. *Thomas*, 75 Cal. App. 231 [242 Pac. 509].) The rule is not altered by the fact that a contract holder may elect to give a ninety-day notice and then he will be, under the terms of the contract, entitled to receive three rabbits and their increase and as many hutches as he shall have paid for. Having duly exercised that right, what was theretofore an agreement to buy and sell might then become a sale—but not until then. In the meantime the ownership in and to all properties remained vested in the petitioners.

■ Counsel speak of three does and two hutches as constituting a unit. Looking at the papers before us it is apparent that the business of the petitioners consisted of

operating a plant harboring all of the units covered by each of the outstanding contracts and the units, or fractions of units, on hand and in excess of the calls of such outstanding contracts. There was no division or segregation of the property in any manner whatever. A most cursory reading of the contract shows that the petitioners are engaged in business for profit and that each contract is bought and sold in expectation of gain to each party. The sales moneys received by the petitioners constitute the gross earnings of the petitioners from the business. The contract makes no provision for the division of those proceeds into two or more funds. Therefore, out of said gross earnings, four dollars per head for breeding does at first breeding age, and five cents per pound live weight for all other rabbits, is the measure, and only the measure, of payments by the petitioners to the contract holders. The residue of the earnings is payable to and may be retained by the petitioners.

Of the earnings going to the contract holders it is clear that a portion arises from the increase of the rabbits, a portion from the use of the hutches, and a portion from the use of every other part of the plant, real or personal. The respondent contends that the contract sold by the petitioners falls within the provisions of the Corporate Securities Act [Stats. 1917, p. 673, as amended by Stats. 1925, p. 962], and he cites and relies on section 2, subdivision 7, paragraph (d), which, so far as pertinent, provides as follows: "Any instrument offered for sale, . . . to the public by any company, evidencing or representing any right to participate or share in the profits, earnings or income, gross or net, derived from the assets, or any thereof, of any business carried on for profit or in the distribution of such assets. . . ." We think he is clearly correct in this contention.

The facts in the instant case are quite different from the facts in such cases as *People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089]; *Creasy Corporation* v. *Enez Bros. Co.,* 177 Wis. 49 [187 N. W. 666]; *Lewis* v. *Creasy Corporation,* 198 Ky. 409 [248 S. W. 1046]. The case of *People* v. *McCalla,* 63 Cal. App. 783 [220 Pac. 436], is more nearly in point.

The writ is denied.

Warne, P. J., *pro tem.,* and Nourse, J., concurred.