MODESTO DRY YARD, INC., A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14374.   Promulgated March 9, 1950.

*Edward R. Taylor, Esq.*, and *Charles L. Barnard, Esq.*, for the petitioner.

*Gerald W. Brooks, Esq.*, for the respondent.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

378

**OPINION.**

VAN FOSSAN, *Judge*: The excess profits credit for the taxable years 1943 and 1944 is based on income and is computed under section 713 (f) (6) of the Internal Revenue Code. In its brief the petitioner confines its arguments to the 1938 loss, stating that, "irrespective of the allowance or disallowance of the 1937 loss, the average base period net income would be the same since it is limited to the highest excess profits net income for a taxable year in the base period (§713 (f) (6)),

in this case·the year 1938." It contends that the 1938 loss in the amount of $3,689.92 should be excluded in the computation of excess profits net income for 1938 under section 711 (b) (1) (B) of the Internal Revenue Code, which provides that in computing the excess profits net income for any taxable year in the base period, "There shall be excluded gains and losses from sales or exchanges of capital assets held for more than 6 months."

The petitioner argues that the loss resulted from the sale of contracts or rights thereunder and that such contracts or rights constituted capital assets, since they were purchased for speculation and were not held for resale to its customers.

The respondent contends that the petitioner did not merely match sales against purchases, but actually sold raisins which had become a part of its inventory; that the raisins were not capital assets; that even if they were capital assets, the holding period was not shown to be more than six months; that hence section 711 (b) (1) (B) is not applicable; and that the Commissioner's determination must be approved.

Section 117 (a) (1) of the Revenue Act of 1938, applicable herein, defines capital assets as all property held by the taxpayer (whether or not connected with his trade or business) except (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or (2) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (3) property, used in the trade or business, of a character which is subject to the allowance of depreciation provided in section 23 (1).

The petitioner's business during 1937 and 1938 consisted of buying fresh fruits from farmers, drying such fruit in its own plant, and selling it in its natural condition and unpacked to packers, who in turn processed and packed the fruit in various sized containers as directed by their respective customers.

In the forepart of 1937, long before the 1937 fruit had matured and was harvested, the petitioner purchased as a speculation from Gomperts, a broker, for delivery in the latter part of 1937, 8,430 25-pound boxes of dried apricots, 33,000 25-pound boxes of golden bleach raisins, and 10,000 25-pound boxes of Thompson natural seedless raisins. Although 25-pound boxes were designated, it was the custom of the trade that the ultimate purchaser, at the time shipping instructions were given to the packer, could designate the size boxes in which the fruit was to be packed and shipped. All of these packed dried fruits were sold in the latter part of 1937 by petitioner to Gomperts, who disposed of them in turn, with the exception of the 10,000 25-pound boxes of Thompson natural seedless raisins, which were sold

in 1938. The loss in the stipulated amount of $3,689.92 resulted from the sale of such raisins.

The fact that the merchandise ordinarily dealt in (unpacked dried fruits in their natural condition) was similar in kind or nature to that involved in the so-called Gomperts transactions (processed and packed dried fruits) is not determinative. See *Nelson A. Farry*, 13 T. C. 8; *Carl Marks & Co.*, 12 T. C. 1196; *E. Everett Van Tuyl*, 12 T. C. 900; *Edward E. Trost*, 34 B. T. A. 24; and *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772; certiorari denied, 314 U. S. 683.

The contracts entered into by petitioner in the forepart of 1937 were executory contracts for the delivery at a future date of packed dried and processed fruits. Neither Gomperts nor petitioner, at any time, accepted delivery of the packed dried fruits involved.. Such executory contracts are futures contracts. Gomperts testified as follows:

In our trade language, we say that we buy and sell raisins, but actually we do not handle the raisins; so it is really that we buy and sell the right to receive raisins.

It is stated in "Future Trading" by Hoffman that "in dealing in futures one is dealing not in the actual commodity but in *claims* on or *contracts* for the commodity." In *Commissioner* v. *Covington*, 120 Fed (2d) 768; certiorari denied, 315 U. S. 822, it is stated:

Transactions in commodity futures are commonly spoken of as purchases and sales of a specific commodity such as corn, wheat, or cotton, but the traders really acquire rights to the specific commodity rather than the commodity itself. These rights are intangible property which may appreciate or depreciate in value. They are capital assets held by the taxpayer (whether or not connected with his trade or business), * * *

It is well established that such contracts are not includible in inventory. *Estate of Dorothy Makransky*, 5 T. C. 397, 411–412; affirmed per curiam, 154 Fed. (2d) 59; *Farmers & Ginners Cotton Oil Co.* v. *Commissioner*, 130 Fed. (2d) 941, affirming per curiam B. T. A. memorandum opinion, March 3, 1942, wherein it was held that futures contracts are not includible in inventory if on hand at the end of the year. *Commissioner* v. *Covington, supra; Tennessee Egg Co.*, 47 B. T. A. 558, 560.

The respondent argues that shipping instructions were due sometime between October, 1937, and February, 1938; that it "was solely the petitioner's own act which prevented the effecting of the transfer of title, even though a substantial part of the purchase price had been paid"; that "beneficial title" to the raisins had clearly passed to petitioner; that the seller was clearly thereafter holding the raisins merely as agent for the petitioner; and that the raisins were, under article 22 (c)–1 of Regulations 94 and 101, properly includible in petitioner's inventory and hence were not capital assets. The arguments of respondent have no factual basis.

Article 22 (c)–1 of Regulations 94 and 101 provides, in part, that "A purchaser * * * should not include [in inventory] goods ordered for future delivery, transfer of title to which has not yet been effected."

The raisins involved were not included in petitioner's inventory, nor were they entered in 1937 in the books of account as purchases of fresh fruits to be dried and sold in their natural condition in sweat or picking boxes in the ordinary course of its business. Furthermore, prior to receipt of shipping instructions, the fruit could not be and was not segregated by the packer to any particular contract. The packer was required to segregate the raisins, weigh them, pack them into specified pound or kilo boxes, and deliver them f. o. b. dock. Under the contracts, delivery was to be made by the packers in the latter part of 1937. In order to extend the time of delivery, petitioner made payment of a part of the purchase price and also paid taxes, which accrued early in March, 1938, and insurance premium, covering the quantity of raisins involved but not yet segregated from other raisins held by the packer. Time of delivery, and hence time of giving shipping instructions, was extended beyond February, 1938, not solely by the act of the petitioner, but by the agreement of the parties.

It is elementary that title passes when the parties intend that it shall pass and such intention is to be gathered from the contract and conduct of the parties, usages of trade, and the circumstances of the case. Under a contract to sell unascertained or future goods by description, title thereof does not pass to the purchaser until goods of that description in a deliverable state are unconditionally appropriated to the contract either by the seller or the purchaser with the consent of the other. If the contract requires the seller to deliver the goods to the buyer, or at a particular place, title does not pass until the goods have reached the place agreed upon. Part payment of purchase price is not conclusive that a sale was intended, but is evidence to be considered with other evidence adduced. Civil Code of California, secs. 1738, 1739, and 1796 (4); *Goldberg* v. *Southwestern Metals Corporation*, 208 Pac. (2d) 75; *Standard Oil Co.* v. *Johnson*, 147 Pac. (2d) 577; 24 Cal. (2d) 40; *American Factors, Ltd.* v. *Goss*, 238 Pac. 121; 72 Cal. App. 742; *Turner, Kuhn & Fraser, Inc.* v. *Jones*, 215 Pac. 1033; 61 Cal. App. 732; *Walti* v. *Gaba*, 116 Pac. 963; 160 Cal. 324; *Blackwood* v. *Cutting Packing Co.*, 18 Pac. 248; 76 Cal. 212; *Haas Bros.* v. *McLaughlin* (CCA–9), 39 Fed. (2d) 381. In the latter case, the court stated:

* * * Its [the taxpayer's] conduct is in harmony with the last provision of Regulation 45 [same as above quoted], and corroborates the record, that the merchandise was not identified, nor were the goods set apart to, or used by, appellant [taxpayer] at any time during 1919 and 1920, respectively. The fact that appellant paid storage and insurance for December, 1920, in view of the record, is of no importance. * * *

Moreover, the contracts involved herein expressly provide that the "Goods are at the risk of Buyer * * * from and after delivery to initial carrier or such carrier's agent." Unless otherwise agreed, and it was not in this case, risk generally follows title. Sec. 1742, Civil Code of California, *McKinney* v. *Sargent*, 13 Pac. (2d) 373; 216 Cal. 18; *Puritas Coffee & Tea Co.* v. *DeMartini*, 206 Pac. 96; 56 Cal. App. 628.

Title to the packed dried raisins not having passed to petitioner, he may not include them in his inventory. *Brown Lumber Co.*, 9 B. T. A. 719; affd., 35 Fed. (2d) 880; *Barde Steel Products Corporation*, 14 B. T. A. 209; affd., 40 Fed. (2d) 412; certiorari denied, 282 U. S. 853; *Jagerson Fuel Co.*, 24 B. T. A. 871; *White Oak Transportation Co.*, 24 B. T. A. 307. See also A. R. M. 100, C. B. No. 3, p. 66, and A. R. M. 135, C. B. No. 5, p. 67, in the former of which publications it is stated that (p. 71) "transactions in 'futures,' unclosed at the end of the taxable year, form no integral part of the cost of the commodity included in the taxpayer's physical inventory," and in the latter of which it is stated that (p. 79) "the commodity covered by such open 'future' contracts shall not be added to nor deducted from the intory of the taxpayer."

The respondent argues that there is no support for petitioner's contention that the loss in question arose from the purchase and sale of contracts, since the contract specifically provides that "This contract is not assignable without the written consent of the seller."

A stipulation against nonassignment of a contract may be waived by the conduct of the parties. *Maguire* v. *Lees*, 169 Pac. (2d) 411, 415; 74 Cal. (2d) 697. It appears that the shipments were made under the contracts by the packers to the assignees of petitioner or Gomperts. Hence the packers waived the clause of the contract prohibiting assignment without written consent. Furthermore, the name of the consignee was not inserted in the original contracts running from the packers to Gomperts or in the contracts from Gomperts to petitioner. This custom permitted the insertion of the name of a consignee other than that of the purchaser designated in the contracts, i. e., the name of the assignee of petitioner or Gomperts.

In our opinion the contracts to purchase packed raisins to be delivered at some future time, or futures contracts, acquired in 1937 and held by petitioner until disposed of in 1938, do not fall within any of the exceptions set forth in section 117 (a) (1) and hence are capital assets as defined in that section.

The contracts involved or rights thereunder were entered into or acquired on May 7 and 10, 1937, and were disposed of on June 13 and 18, 1938. They were, therefore, held for more than six months.

Since the 1938 loss in the stipulated amount of $3,689.92 resulted from the sale of capital assets held for more than six months, such

amount is excludable in the computation of excess profits net income under section 711 (b) (1) (B) of the Internal Revenue Code.

In view of our conclusion, it is not necessary to determine the alternative contention of the petitioner that the losses sustained in 1937 and 1938 are disallowable under section 711 (b) (1) (J) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*