## SPENCER, WHITE & PRENTIS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 304.

Circuit Court of Appeals, Second Circuit.

July 10, 1944.

Writ of Certiorari Denied Dec. 4, 1944.

See 65 S.Ct. 269.

Edgar A. B. Spencer, of New York City, for petitioner Spencer, White & Prentis, Inc.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, and Harry Baum, Sp. Assts. to the Atty. Gen., for the Commissioner of Internal Revenue.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

PER CURIAM.

The taxpayer is a New York corporation engaged in general construction and engineering business. It installed foundations, underpinned buildings and entered into short term construction contracts dealing with sub-surface and hydraulic conditions. Most of its contracts were short term contracts completed within one year, but it was also interested in various long-term contracts. Its books were kept and its returns made for fiscal years beginning on July 1 and ending the following June 30, but always on the accrual basis. On December 11, 1933, it applied to the Commissioner for a consent to change its method of accounting for long-term contracts to a completed contract basis but failed to obtain a consent because the application was not submitted within ninety days after

46

the beginning of the taxable year as required by Article 41-2 of Treasury Regulations 94, promulgated under the Revenue Act of 1936.

■ On June 29, 1937, the taxpayer entered into and in July, 1937, began to perform a unit price contract with the Board of Transportation of the City of New York for subway construction under Sixth Avenue, from West 9th Street to West 18th Street, in the Borough of Manhattan. It was engaged in work on this contract during the fiscal year ended June 30, 1938. The contract required the performance of thousands of types of operations, only some of which were known as pay items. In making bids under the contract, the taxpayer included in the bid prices for pay items the cost of those operations for which no price was specified and in this manner distributed the cost of the operations not specified as pay items over the pay items to which they were related or ratably over all the pay items. The nonpay items included such things as the taking up and relaying of sidewalks and roadways, support and maintenance of buildings, water mains and gaspipes and administration and engineering expenses.

The contract provided for progress payments to the taxpayer based upon certified partial estimates, to be made from time to time by the city engineer, of the value of the work done and materials incorporated in the work. The first certification of work completed was made approximately three months after the work was begun and certificates were generally made each month thereafter. The contract was subject to a performance bond and as further security to retention by the City of 15% of the amounts certified.

The taxpayer in its income tax statement returned as gross income, accrued under the contract during the fiscal year July 1, 1937 to June 30, 1938, inclusive, a total which was made up as follows:

(a) Moneys earned under contract certified and paid $3,002,303.34
(b) Amount certified under contract but retained by the City 529,818.24
(c) Amount earned but not yet certified 321,519.85
$3,853,641.43

The total of $3,853,641.43 included by the taxpayer as gross income in its return for fiscal year in question covered not only the contract price for pay items completed but some nonpay items yet to be performed. This resulted from the fact that the cost of nonpay items was included in the cost of pay items.

The taxpayer accrued on its books as of June 30, 1938, the sum of $327,500 as a "liability to restore property under contracts" which was the estimated cost of items which it had carried in its accrual of gross income. This amount of $327,500 it deducted in its tax return as "increased expenses". But this amount did not represent obligations due to subcontractors, materialmen, laborers or other creditors and was an estimate of the cost of work under the contract performed after June 30, 1938, at a cost of $339,090.40. The Commissioner disallowed the deduction and assessed a deficiency in the taxpayer's income tax of $71,828.41 and in its excess profits tax of $34,049.38 and the Tax Court reached the same result as the Commissioner.

The question before us on this appeal is whether the estimated future cost of work which had not been performed in the fiscal year ending June 30, 1938, was a proper accrual deduction from the income of that year. We think that under the authorities the Commissioner and the Tax Court were right in disallowing the deduction and that the order determining the foregoing deficiencies against the taxpayer should be affirmed.

It is conceded that the receipts by the taxpayer, though they exceeded the amount due for the work that had been performed under the contract, were properly returned as income. But the fact that payments would have to be made by the taxpayer in a future year for work which had not been done in the year in question did not give rise to a proper tax deduction. It is argued that it did give rise to such a deduction because a liability existed to perform the work during that year. This theory, however, proves too much, for under it a taxpayer on the accrual basis could estimate the entire gross income which might be received from his contract, though no work had been begun, could deduct the estimated expense of performance and could compute the taxes accordingly. In other words, if an estimate was possible, there would be room to make returns involving

anticipated results of great uncertainty. Moreover, if the taxpayer's theory were applied consistently, in the present case, the income derived from the contract would have to be returned for the fiscal year ending June 30, 1937, rather than for the year ending June 30, 1938, because the contract went into effect during the former year and the obligations of the parties then became fixed inter sese.

The difficulty with the taxpayer's claim is that it ignores the fact that our income tax law is based upon annual periods of computation and that it seeks to have the taxes computed under a system which Justice Roberts, in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287, 64 S.Ct. 596, 599, termed "partly annual and partly transactional." In Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S. Ct. 364, 365, the same Justice said: "It has never been questioned that a taxpayer who accounts on an accrual basis may, and should, deduct from gross income a liability which really accrues in the taxable year. It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; * * *." The liability for the estimated deduction clearly had not accrued during the year in which deduction was sought. The only thing which had accrued was the obligation to do the work which might result in the estimated indebtedness after the work was performed.

It is well settled that deductions may only be taken for the year in which the taxpayer's liability to pay becomes definite and certain, even though the transactions (such as the contract in the present case) which occasioned the liability, may have taken place in an earlier year. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; American Hotels Corp. v. Commissioner, 2 Cir., 134 F.2d 817; Amalgamated Housing Corp. v. Commissioner, 37 B.T.A. 817, affirmed 2 Cir., 108 F.2d 1010; cf. Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287, 64 S.Ct. 596; Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Here the work for which the deduction is sought was unperformed and its cost was, as we have already indicated, no more than a fair estimate. Such a deduction as the taxpayer seeks had not accrued "during the taxable year" and, therefore, did not meet the requirements of Section 23(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Code, § 23(a).

The petitioner's reliance upon United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, is misplaced. There the deduction of certain estimated tax liabilities set up in a reserve entered on the taxpayer's books in accordance with a Treasury Regulation was allowed, though the taxes had not been assessed. But all the events had occurred which determined the liability to pay the tax. Here liability for the work done after July 1, 1938, had not been incurred for the work had not been performed. Cf. Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

The contention that the deduction of future expenses was consistent with the taxpayer's former accrual method of accounting clearly is without substance fortified as it is by only a single entry some years before. The claim that the Tax Court erred in its findings and in its failure to make certain findings is likewise without merit. The contention seems to rest on a confusion of facts with conclusions of law.

The order of the Tax Court is affirmed.