*Decisions will be entered under Rule 50.*

PACIFIC GRAPE PRODUCTS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15596.    Promulgated January 2, 1952.

*Samuel Taylor, Esq.*, and *Walter G. Schwartz, Esq.*, for the petitioner.

*Robert G. Harless, Esq.*, for the respondent.

1100

**OPINION.**

HILL, *Judge:* The first issue concerns the question whether petitioner erroneously reported accrued income from sales of certain unshipped and unpaid for goods in the taxable years in which it billed its buyers for such goods. Petitioner contends that, in accordance with its agreements with its buyers, sales took place and title to the goods which the buyers had not ordered out by the agreed billing dates passed to these buyers when the petitioner billed them for the goods. In the alternative, the petitioner contends that regardless of the passage of title its method of accruing the sales price for

the goods on its returns for the years in which it billed its customers clearly reflected its income and must be recognized for tax purposes. It is respondent's position that petitioner's right to accrue such income depends on the question of when the goods were sold with title passing and that title to the goods in question did not pass until the goods were shipped out and paid for in the taxable years following the years in which the goods were billed.

With respect to the method of reporting income, section 41 of the Internal Revenue Code provides as follows:

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not *clearly reflect the income*, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. [Emphasis added.]

It appears from the evidence that petitioner's method of computing accrued income from the sales was in accordance with the method of accounting it regularly employed in keeping its books. Accordingly, the question for determination is whether the method employed by the petitioner *clearly reflected its income*. (Section 41, *supra*.)

As the facts indicate, we are dealing with a manufacturer of canned goods whose principal source of income is derived from the sales of its goods. We are particularly concerned with the question as to the periods in which income from the sale of certain of these goods should fall. On the respective dates on which the petitioner claims to have realized income from such sales, no part of the purchase price had been received. The goods were not ready for delivery, being uncased and unlabeled. Petitioner remained liable to ship them out. Furthermore, although it has not been definitely established, a substantial quantity of the goods was probably under pledge as security for loans when they were billed. Under such circumstances we are convinced that it is incumbent upon the petitioner to prove that the particular goods in question were sold and title passed to its buyers on the billing dates if it is to sustain its position that the method of accruing the income from these sales clearly reflected its income. Accordingly, we reject petitioner's alternative contention.

The question as to when title passed is also pertinent with respect to what goods should have been included in petitioner's closing inventories for the taxable years in question, in accordance with the provisions of

section 22 (c) of the Code and the applicable Regulations thereunder.[1]

Since the contracts in question were entered into and performed in the State of California, the law of that state is applicable to the question of passage of title.

The Pacific Coast F. O. B. Canned Foods Contract, introduced in evidence, was employed by the petitioner in contracting for all of the sales of the goods in question. It contained on its face terms of purchase and sale; however, we can not conclude from the use of such terms that a present sale was intended. Parties frequently intend a contract to sell even though they employ the present tense of the verbs sell, purchase, buy, and the like. Their intent must be gathered from the contract as a whole.[2] The contracts entered into before the canning season could not have been present sales since the goods subject to such contracts were not then in existence.[3] Nor does the petitioner contend that any of these or any of the contracts entered into after the canning season were present sales. In fact it is petitioner's position that title passed at a date subsequent to those on which the contracts were entered into. Furthermore, from a consideration of the contract as a whole, we believe the parties intended to enter into a contract for the sale of goods in the future, and we so hold.

---

[1] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(c) INVENTORIES.—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Regulations 111:

Sec. 29.22 (c)–1. NEED OF INVENTORIES.—In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale, in which class fall containers, such as kegs, bottles, and cases, whether returnable or not, if title thereto will pass to the purchaser of the product to be sold therein. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold (including containers), title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected.

[2] *Woodbine* v. *Van Horn*, 29 Cal. 2d 95, 173 P. 2d 17; *MacRae* v. *Heath*, 60 Cal. App. 64, 212 P. 228; *Waltt* v. *Gaba*, 160 Cal. 324, 116 P. 963.

[3] Section 1725 (3) of the Civil Code of California:

§ 1725. *Existing and future goods.* \* \* \*

(3) Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods and as soon as the seller acquires the goods the property therein shall pass to the buyer without further act if the parties so intend unless the agreement otherwise provides.

See also: *Schiffman* v. *Richfield Oil Co.*, 8 Cal. 2d 211, 64 P. 2d 1081.

We are not concerned with the question as to the passage of title in the goods delivered in due course prior to the billing dates (December 31 of each year). With respect to the goods which the buyers had not ordered delivered by December 31 of each year, the contract contains no specific provision relative to the passage of title. It does set out the procedure to be followed with respect to such goods. In accordance with the language of the contract if the seller elected to withhold shipment at the buyer's request then the goods (fruit products in this case) unshipped were to be billed to the buyer on December 31 and the seller was to draw a draft for the purchase price and procure a warehouse receipt covering the goods to accompany the invoice. These documents were then to be forwarded to the buyer who was to pay the draft within ten days and obtain his warehouse receipt. The seller was to insure the goods for the buyer's account and the buyer was to reimburse the seller at a fixed rate per month for the cost of insurance and storage. The seller was to ship the goods to the buyer when requested.

It appears that the issuance of the warehouse receipt to the buyer and the payment of the purchase price in accordance with the terms of the written contract protected the rights of both seller and buyer. However, the language of the contract is not conclusive as to the exact time title passed, and this issue is complicated by the fact that petitioner in its usual practice of dealing with its customers admittedly did not follow the written provisions of the contract.

In many instances the petitioner merely sent its buyers an invoice. We know that some of the goods so invoiced were not paid for until delivered but there is no other evidence as to when the rest of the goods billed on open account were paid for. In some instances the petitioner drew drafts to accompany the invoices but it never provided its buyers with warehouse receipts unless so requested. The evidence fails to indicate what quantities of the goods billed out in the years in question were covered by warehouse receipts.

Petitioner contends, however, that despite the terminology of the contract its methods of billing customers were in accordance with established trade practices of the California canning industry with respect to goods being sold under the Pacific Coast F. O. B. contract. Petitioner further alleges that it contracted in accordance with such trade practices and that accordingly they must be recognized as part of its agreements with its buyers. Petitioner's evidence establishes the existence of such trade practices in the canning industry and we believe that the same should be given effect as being part of its contracts with its buyers.

The effect of this departure from the strict terms of the written contract forces us to look beyond the writing to determine the question

of passage of title to the unshipped goods.[4]   Petitioner argues that it was the general understanding of the canning industry as a whole that title to such unshipped goods passed to buyers on the billing dates, regardless of the fact that the goods were not labeled, cased, nor in any way segregated or identified as being subject to the contract of any one buyer rather than another, and regardless of the fact that a substantial portion of the goods may have been under pledge to banks as security for loans made to the canners.   The evidence introduced by the petitioner appears to establish the fact that the California canners interpreted the sales agreement as modified by usage to pass title to the buyers on the billing dates.   It is to be noted, however, that such an interpretation of the agreement would apparently work to the disadvantage of buyers by giving them less than they would have been entitled to under the written terms.   Petitioner's evidence has failed to establish as a fact that buyers placed the same interpretation on their agreements with respect to the passage of title as did the canners. In any event, we believe the title did not pass on the respective billing dates because the goods subject to each of the buyers' contracts were not yet ascertained, a basic prerequisite for the passage of title.[5]

Petitioner seeks to apply the fungible goods doctrine, however, and argues that there were in existence sufficient fruit products of the varieties, grades, and sizes of cans to meet all contract requirements, that these goods were fungible and that the buyers on the billing dates took title to a specific or ascertained mass of canned goods as tenants in common of the entire mass.[6]   It is interesting to note that if this doctrine were to apply there would not be one mass to which title would pass but rather there would be as many specific masses as there were different canned fruit products and different grades, sizes, and varieties thereof.   But even recognizing the fungible nature of the canned goods within such narrow confines, it is essential in any appli-

---

[4] See : Williston, Contracts, §§ 648, 652, with respect to collateral agreements added to written contracts by usage.

[5] Section 1737 of the Civil Code of California :

§ 1737. *No property passes until goods are ascertained.*   Where there is a contract to sell unascertained goods no property in the goods is transferred to the buyer unless and until the goods are ascertained, but property in an undivided share of ascertained goods may be transferred as provided in section 1726.

[6] Section 1726 of the Civil Code of California :

§ 1726. *Undivided shares.*   (1) There may be a contract to sell or a sale of an undivided share of goods. If the parties intend to effect a present sale, the buyer, by force of the agreement, becomes an owner in common with the owner or owners of the remaining shares.

(2) (*Fungible goods.*)   In the case of fungible goods, there may be a sale of an undivided share of a specific mass, though the seller purports to sell and the buyer to buy a definite number, weight or measure of the goods in the mass, and though the number, weight or measure of the goods in the mass is undetermined.   By such a sale the buyer becomes owner in common of such a share of the mass as the number, weight or measure bought bears to the number, weight or measure of the mass.   If the mass contains less than the number, weight or measure bought, the buyer becomes the owner of the whole mass and the seller is bound to make good the deficiency from similar goods unless a contrary intent appears.

cation of the fungible goods doctrine that the parties should have intended to pass title in a share of an undivided mass of goods. The problem in this respect is set out in Vold on Sales at page 188:

The most difficult problem to solve in applying the law of fungible goods is the question of fact whether the parties in the case in hand intended their bargain to be for an undivided joint interest in the mass. It may often happen that, though the seller has a mass of goods on hand either strictly fungible or readily susceptible by agreement of being treated by the parties as fungible, yet the actual agreement the parties make does not or may not contemplate the passing of the property in an unseparated joint interest in this mass. Thus, where the bargain is merely to sell an agreed amount of goods of a certain kind and quality, the ordinary case of a contract to sell unspecified goods, no property in any joint interest vests in the buyer even though the seller has on hand the requisite stock of goods from which to perform his contract. The buyer in such cases has not agreed to become the owner of a joint interest with the seller in any specific mass of goods, and the seller has not agreed to transfer any particular goods. The contract therefor clearly remains executory until certain specific goods are appropriated to the contract.

The petitioner's evidence is insufficient to prove the necessary intent in this respect. We hold that title to the unshipped and unpaid for goods did not pass to petitioner's buyers in the years claimed. Accordingly, we hold that petitioner's method of accruing income from such sales did not clearly reflect its income, and we uphold the respondent's reallocation of such income among the years in question.

The second issue concerns the petitioner's right to take as deductions, in the taxable years in which unshipped goods were billed to buyers, the accrued expenses of brokerage fees incurred in connection with the sales of these goods. Petitioner introduced evidence with respect to the customary practice of the members of the California canning industry in accruing the expenses of such fees on their books as of the dates the unshipped goods were billed. Petitioner failed to introduce in evidence its agreements with its brokers and accordingly we do not know whether the parties contracted in accordance with any such trade practice put in evidence by the petitioner. It may well be that petitioner's liability for the brokerage fees did not become fixed until it received payment of the purchase price for the goods sold. Because of failure of proof in this respect, we hold that petitioner has not shown that the respondent erred in denying the deductions for such expenses when claimed and in allowing them for later years when the goods were paid for.

The third issue concerns petitioner's right for the purposes of income tax deductions to accrue, in the year in which it undertook the contractual liability to ship certain goods, estimates of various expenses with respect to the shipment of these goods in later taxable periods. This issue involves accrual of shipping expenses in the years 1939, 1940, and 1941 with respect to the unshipped goods billed to buyers

on December 31, 1939, 1940, and 1941, respectively, and also the accrual of similar expenses in 1944 with respect to goods sold to the United States Government in 1944 but not delivered until 1945. The expenses involved are certain costs for labeling, packing, and freight.

Petitioner argues that its liability to perform the services was fixed in each of the years in which it contracted for the sale of the goods and that the expenses incurred in the performance of the services accrued on the respective billing dates. The general rule is well established that the expenses are deductible in the period in which the fact of the liability therefor becomes fixed and certain. *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516; *Security Flour Mills* v. *Commissioner*, 321 U. S. 281; *United States* v. *Anderson*, 269 U. S. 422.

The evidence presented indicates that all of the goods in question were labeled, cased, and prepared for shipment in a taxable period subsequent to the taxable years in which the petitioner undertook the liability to do so. Likewise, the movement of the goods for which freight expenses were incurred took place in subsequent taxable years. It was not until these events occurred that the fact of the petitioner's liability for the expenses therefor became fixed and certain. *Spencer, White & Prentis, Inc.* v. *Commissioner*, 144 F. 2d 45. Accordingly, we hold that the petitioner was not entitled to accrue these expenses in the years in which it undertook the duty to perform the related services and billed buyers for unshipped goods.

The fourth issue concerns the deductibility of certain expenses in the amount of $8,655.17 incurred by the petitioner in the year 1945. Although the petitioner's tax liability for the year 1945 is not before us, nevertheless, the issue with respect to the 1945 business deductions is properly raised with respect to the petitioner's right to a net operating loss carry-back to the year 1943. Since we have found that these expenses were ordinary and necessary business expenses for the year 1945, they are deductible in accordance with the provisions of section 23 (a) of the Code and are to be included in the computation of the net operating loss deduction, and we so hold.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: The practice of disapproving consistent accounting systems of long standing seems to me to be exceeding all reasonable bounds. See *Heer-Andres Investment Co.*, 17 T. C. 786. Methods of keeping records do not spring in glittering perfection from some unchangeable natural law but are devised to aid business men in maintaining sometimes intricate accounts. If reasonably adapted to that use they should not be condemned for some abstruce legal reason, but only when they fail to reflect income. There is no persuasive in-

dication that such a condition exists here. On the contrary, a whole industry apparently has adopted the method used by petitioner.

It will not do to say that respondent should not have disturbed petitioner's accounting method, but that since he has done so, we are powerless to do otherwise. As long as we continue to approve the imposition of theoretical criteria in so purely practical a field, respondent will go on attempting to seize on such recurring fortuitous occasions to increase the revenue, even though he may actually accomplish the opposite. Cf. *Heer-Andres Investment Co., supra; Robert G. Frame*, 16 T. C. 600. I think it evident that petitioner's generally recognized accounting system did not distort its income and that it should be permitted to continue to use it. Cf. *Atlantic Coast Line R. R. Co.*, 4 T. C. 140.

VAN FOSSAN, MURDOCK, LEECH, JOHNSON, and TIETJENS, *JJ.*, agree with this dissent.