EDWARD T. GARDNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33740.   Promulgated May 29, 1953.

*Ralph R. Bailey, Esq.,* for the petitioner.
*Wilford H. Payne, Esq.,* for the respondent.

**OPINION.**

JOHNSON, *Judge:* The liability of the transferor for erroneous boundary descriptions in titles insured by Commonwealth, Inc., through it under the agency contract is no longer being questioned by the respondent. The petitioner contends that immediately upon the assertion by Meyers of a title defect, the transferor became liable for the expense of curing the alleged defect and payment of damages, and being upon an accrual basis the amount of the liability is accruable as a deduction. He asserts that the minimum liability is $5,000, an amount representing the total cost of resurveying the area covered by L. E. Davis Claim 42 and attorney fees for legal services. The substance of respondent's contention is that the alleged arrangement made with a surveyor and an attorney for the work is not a basis for accruing any amount for deduction purposes. As to respondent's view, petitioner says that liability to cure the alleged defects was a sufficient basis for accrual and that the expenditures necessary to correct the defects were determined with reasonable certainty.

The testimony of the surveyor, without more, would establish the existence of a contract at the close of 1945 to perform the survey work for $3,500. Testimony of Bell, who represented the transferor in the discussion of the matter with the surveyor, is considered to be more reliable. The effect of his testimony is that the total amount of $5,000

for surveying and legal services was estimated by the transferor after discussion of the subject with the engineer and attorney. His testimony is corroborated by an affidavit he executed in December 1949. Obviously, if enforceable contracts had been entered into in 1945 for performance of the work for specified amounts there would not have been any need to characterize the total figure as an estimate of the cost of the work.

In any event, there was no agreement for the performance of the survey work at any specified time. The legal work could not be started until the resurvey had been made. No part of the work had been done at the time of the hearing herein on July 7, 1952, 7 years after Meyers called at the office of the transferor, and there was no definite plan at that time to do the jobs at any definite time in the future. Meyers has not pressed the matter in any manner and a similar notice was not received from any other insured. The inference to be drawn from the testimony is that the transferor was content to defer the survey until it became necessary to adjust bona fide claims of holders of insured titles. Such a time has not arrived.

Petitioner cites *Harrold* v. *Commissioner*, 192 F. 2d 1002; reversing 16 T. C. 134, as containing the applicable principles to be applied, and when applied to the facts to require a similar result. In that case the court said:

We conclude that when all the facts have occurred which determine that the taxpayer has incurred a liability in the tax year, and neither the fact nor the amount of the liability is contested, and the amount, although not definitely ascertained, is susceptible of estimate with reasonable accuracy in the tax year, deduction thereof from income may be taken by a taxpayer on an accrual basis. This procedure does not violate the principle that income taxes must be calculated on an annual basis, but, on the contrary, allocates to each year the proper income and expense, and prevents distortion of the taxpayer's financial condition in the tax year. See *United States* v. *Anderson*, 269 U. S. 422, 440. It gives heed to the true facts of each case rather than to an arbitrary rule of thumb; and the adjustments which must be made after the precise amount is ascertained are as easily consummated as those which are required when it is impracticable to make precise calculations of income or outgo before the end of the year, although all of the events which fix the amount have accrued therein. We think the proper approach to the problem before us should be realistic and one that accords with good business practice, rather than an approach based upon subtle technicalities.

In that case the taxpayers, as partners, engaged in the mining of coal by the strip method on leased land, were under a contractual obligation to restore and replace the surface in compliance with the laws of West Virginia. The coal was completely removed in 1945 from the entire acreage under lease, and based on their experience in backfill operations the partners set up a reserve on the books of the partnership expense at the rate of $1,000 an acre for the work. The refilling operations were completed in 1946 at a cost less than the esti-

mate and accrual, and thereafter an amended return was filed for 1945 to reflect the actual cost.

Like mining operations were involved in *Ralph L. Patsch*, 19 T. C. 189, and *J. E. Vincent*, 19 T. C. 501. There, deductions of amounts accrued for refilling mined areas were disallowed partially on the ground that some of the work had not been performed. We said in the *Vincent* case, "An obligation to perform services at some indefinite time in the future will not justify the current deduction of a dollar amount as an accrual."

Here, the transferor was aware as early as about 1935, 10 years before the taxable year, that descriptions in the area were erroneous and must be charged with knowledge prior to 1945 of its liability to adjust the defects. Notice to it in 1945 by Meyers of information received from his neighbor residing on an adjoining lot that a survey had disclosed an error in the land descriptions of his, Meyers', deed, did not create a liability, or increase the existing obligation. Notwithstanding the alleged liability, no expenditure has been made. in an effort to cure the defects. The transferor was dissolved on October 1, 1947, and no contention is expressly made that the contracts allegedly entered into for performance of the survey and legal work continued in force after the liquidation of the corporation under circumstances not disclosed by the evidence.

In *Pacific Grape Products Co.*, 17 T. C. 1097, we said:

The general rule is well established that the expenses are deductible in the period in which the fact of the liability therefor becomes fixed and certain. *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516; *Security Flour Mills* v. *Commissioner*, 321 U. S. 281; *United States* v. *Anderson*, 269 U. S. 422.

Applying that rule we sustained the disallowance by the Commissioner of accrued costs of labeling and packing of and freight charges on goods sold in the year of sale upon the ground that the expenses did not become fixed and certain until the work was performed and the goods were shipped in a subsequent year, citing *Spencer, White & Prentis, Inc.* v. *Commissioner*, 144 F. 2d 45, in which the court said that deductions under section 23 (a) could be taken only when the obligation to pay "becomes definite and certain, even though the transactions * * * which occasioned the liability, may have taken place in an earlier year." Definiteness and certainty of payment, as already pointed out, does not exist here. The evidence strongly infers that no obligation to pay will ever occur, for there is uncertainty that the work ever will be performed.

Accordingly, we find no error in the refusal of the respondent to allow the accrued amount as a deduction for loss sustained or as an ordinary and necessary business expense.

*Decision will be entered for the respondent.*