*Decision will be entered under Rule 50.*

BRESSNER RADIO, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56457. Filed May 16, 1957.

*Sidney Gelfand, C. P. A.*, for the petitioner.
*Victor H. Frank, Jr., Esq.*, and *Joseph F. Rogers, Esq.*, for the respondent.

ARUNDELL, *Judge:* This proceeding was brought to test the correctness of respondent's determination of deficiencies in income tax for the fiscal years ended May 31, 1948, 1949, and 1950, in the amounts of $23,986.82, $43,196.24, and $9,866.83, respectively.

Petitioner alleges that respondent erred in including in taxable income amounts received during the taxable year in connection with television service contracts for which service was to be rendered over a period of time subsequent to the taxable year. In the alternative, petitioner alleges that respondent erred in not permitting it to accrue estimated expenses for performing services in subsequent years. A net loss carryback from petitioner's fiscal year ended May 31, 1951, is also in dispute.

### FINDINGS OF FACT.

Petitioner was incorporated in 1930 under the laws of the State of New York. Its principal place of business is in Brooklyn, New York.

Petitioner kept its books on an accrual basis of accounting and filed its Federal corporation income tax returns for each of the fiscal years ended May 31, 1948 through 1951, with the then collector of internal revenue for the first district of New York.

During the years in question, petitioner sold a substantial number of television sets. In connection with these sales it also entered into a substantial number of contracts called "Service Contract for Television Receiver." Among other things these service contracts provided:

BRESSNER RADIO, INC., agrees to service the television receiver designated above, at the purchaser's address shown below, and to furnish to the purchaser all labor, replacement of parts and tubes * * * necessary to provide proper operation and functioning of the said television receiver at the point of original installation, for a period of [12 months] from the date of this contract * * *

The service company shall not be obligated to service the television equipment or to furnish or replace the parts occasioned by other than normal usage * * *

Beginning with the year ended May 31, 1950, petitioner also entered into renewal service contracts containing substantially the same provisions as immediately set forth above.

The average price received by petitioner for each service contract was between $80 and $100, depending upon the set to be serviced. Payments under the contracts were to be made by purchasers in installments. The contracts were in turn sold by petitioner to a bank for cash.

In the fiscal year ended May 31, 1947, petitioner deferred from income television service receipts of $24,203.96 on its books and Federal income tax return. The $24,203.96 thus deferred was reported as income in the taxable year ended May 31, 1948. The respondent, upon audit of petitioner's tax returns for the year ended May 31, 1947, reduced the amount of deferred income representing television service receipts from $24,203.96 to $18,967.75.

During the fiscal years ended May 31, 1948 through 1951, the number of television and air-conditioning[1] service contracts entered into by petitioner, the total contract price thereof, the amounts deferred by petitioner, and the amounts petitioner now contends should have been deferred, are as follows:

| Fiscal year ended May 31 | Number of contracts | Contract price | Amount deferred | Present contention |
|---|---|---|---|---|
| 1948 | 1,248 | $107,071.00 | $52,478.69 | $41,281.66 |
| 1949 | 3,452 | 281,956.34 | 158,627.84 | 128,406.35 |
| 1950 | 6,274 | 526,136.19 | 227,582.79 | 229,046.78 |
| 1951 | 6,070 | 489,091.98 | (2) | -------------- |

The total number of months for which petitioner would be obligated to render service was 12 times the number of contracts entered into. These obligations fell in the year in which the contract was entered into and in the following year as follows:

| Fiscal year ended May 31 | Number of contracts | Number of months of obligation | Months falling in | |
|---|---|---|---|---|
| | | | Current year | Following year |
| 1947 | 352 | 4,224 | 890 | 3,334 |
| 1948 | 1,248 | 14,976 | 6,585 | 8,391 |
| 1949 | 3,452 | 41,424 | 16,560 | 24,864 |
| 1950 | 6,274 | 75,288 | 32,598 | 42,690 |
| 1951 | 6,070 | 72,840 | 40,585 | 32,255 |

[1] No air-conditioning service contracts were entered into until the fiscal year ended May 31, 1950. In that year petitioner entered into 28 such contracts and in the following year it entered into 143 such contracts.

The capital stock of petitioner was owned 50 per cent by Joseph Bressner and 50 per cent by Harry A. Creppa. Bressner was president and Creppa was vice president of petitioner during the years under consideration. Bressner's duties consisted of general supervision and practically running the service and sales departments. Bressner devoted about one-half of his time and Creppa about one-fourth of his time to the service department.

Petitioner's cost of installing a television set was approximately $19, which consisted of about $10 for labor, $7 for antenna, and about $2 for clerical overhead.

Television sets sold in the years ended May 31, 1948 through 1950, had many defects which necessitated service calls. It was necessary to make many service calls to adjust television sets when new television stations began telecasting. The average number of service calls per set over a year's time was between 8 and 12.

On or about May 18, 1951, Bressner caused a corporation to be organized under the name of Serv-All Corporation, hereinafter referred to as Serv-All. This corporation was organized to service the television sets sold by petitioner and other dealers and to do a general service business. On or about May 20, 1951, petitioner and Serv-All agreed that the latter would take over the unexpired portion of petitioner's service contracts and render all the service called for in such contracts in consideration of $195,895.60, which amount petitioner, as of May 31, 1951, accrued on its books as a liability in favor of Serv-All. Petitioner paid the amount in full during the following fiscal year. Petitioner did not report the $195,895.60 as income in its fiscal year ended May 31, 1951, but neither did it claim any deduction for the liability of the same amount, which liability it incurred in the fiscal year ended May 31, 1951. The stockholders of Serv-All consisted of Bressner's wife, Nettie; Creppa's wife, Julia; Louis Nipomnick; and a Dr. Lober who was a relative of the Bressners. Petitioner ceased servicing television sets after Serv-All was organized. The $195,895.60 was treated as additional income by respondent in the fiscal year ended May 31, 1951, since that would have been the amount petitioner would have deferred if Serv-All had not been organized. Serv-All was a separate and distinct legal entity.

During the taxable years in question, the moneys received from the service contracts were not placed in a separate bank account. There were no restrictions placed upon these moneys; they could be used for any expense or purpose that petitioner desired.

At the time petitioner filed its income tax returns for the years 1948, 1949, and 1950, petitioner did not establish reserves for expenses in the subsequent years for servicing contracts executed in 1948, 1949, and 1950.

For the taxable year ended May 31, 1948, the estimated cost of servicing the 8,391 contract-months falling in the following year was $82,315.71, or at the rate of $9.81 per contract-month.

For the taxable year ended May 31, 1949, the estimated cost of servicing the 24,864 contract-months falling in the following year was $280,465.92, or at the rate of $11.28 per contract-month.

For the taxable year ended May 31, 1950, the estimated cost of servicing the 42,690 contract-months falling in the following year was $270,227.70, or at the rate of $6.33 per contract-month.[3]

The amount of time to install or service a television set varied with the contour of the ground, and the neighborhood. Problems in connection with servicing a television set were beyond what could be anticipated.

With the exception of the $195,895.60 incurred by petitioner on or about May 20, 1951, to Serv-All, petitioner's future expenses for servicing television sets were indefinite and resulted from events which had not presently occurred.

## OPINION.

Subsequent to the filing of briefs by the parties herein, the Supreme Court handed down its decision in *Automobile Club of Michigan* v. *Commissioner*, 353 U. S. 180, which affirmed the Court of Appeals for the Sixth Circuit,[4] which had affirmed our decision reported at 20 T. C. 1033. We think this decision by the Supreme Court is dispositive of the principal issue involved in the instant case.

The final issue in the Supreme Court case concerned the treatment of membership dues that were paid in advance for 1 year. Such dues upon collection were deposited in a general bank account and were not segregated from the general funds but were available and were used for general corporate purposes. For bookkeeping purposes such dues were credited to an account designated "Unearned Member-

---

[3] Since the estimated costs of $82,315.71, $280,465.92, and $270,227.70 are in excess of the amounts petitioner contends under the first issue should have been deferred, petitioner in its brief filed January 30, 1957, has waived its right to deduct, in the alternative, any amount in excess of the amounts petitioner contends should have been deferred. These latter amounts are:

| Year ended May 31 | Amount |
|---|---|
| 1948 | $41,281.66 |
| 1949 | 128,406.35 |
| 1950 | 229,046.78 |

In its reply brief filed February 19, 1957, petitioner has stated that on the basis of the above figures the net amount of deduction for each year would be as follows:

| Year ended May 31 | Amount |
|---|---|
| 1948 | $41,281.66 |
| 1949 | 87,124.69 |
| 1950 | 100,640.43 |

[4] 230 F. 2d 585.

ship Dues." During the first month of membership and each of the following 11 months, one-twelfth of the amount paid would be taken from this account and credited to an account designated "Membership Income." At the close of the year the amount in the latter account would then be reported as income. The Commissioner determined that the petitioner there had received the prepaid dues under a claim of right, without restriction as to their disposition, and that therefore the entire amount received in each year should be reported as income under the claim of right doctrine of *North American Oil* v. *Burnet*, 286 U. S. 417. This determination was sustained by us and by the Sixth Circuit and, in affirming the latter, the Supreme Court said (pp. 189, 190) :

> The petitioner does not deny that it has the unrestricted use of the dues income in the year of receipt, but contends that its accrual method of accounting clearly reflects its income, and that the Commissioner is therefore bound to accept its method of reporting membership dues. We do not agree. * * * The pro rata allocation of the membership dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member. Section 41 vests the Commissioner with discretion to determine whether the petitioner's method of accounting clearly reflects income. We cannot say, in the circumstances here, that the discretionary action of the Commissioner, sustained by both the Tax Court and the Court of Appeals, exceeded permissible limits. See *Brown* v. *Helvering*, 291 U. S. 193, 204–205.

In the instant case petitioner, during the taxable years, entered into a substantial number of contracts to service television sets, which contracts usually ran for a period of 12 months. The average price received by petitioner for each contract was between $80 and $100. No restrictions were placed on the funds so received. The moneys could be used for any purpose that petitioner desired. Of the total contract price thus received by petitioner in each of the years 1948, 1949, and 1950, petitioner deferred to the next year the amounts of $52,478.69, $158,627.84, and $227,582.79, respectively. The record does not show how petitioner arrived at these amounts. However, the parties have now stipulated that if petitioner had reported as installation income 25 per cent of the contract price and deferred the balance on a monthly basis, the amounts deferred would have been $41,281.66, $128,406.35, and $229,046.78, respectively. In our opinion, such a proration "is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render." *Automobile Club of Michigan* v. *Commissioner, supra.* We think there is no basis in this case for deferring the reporting of income received in one year to a subsequent year on the theory that the income in question is not taxable in the year received but in the year earned. On this issue we sustain the respondent's determination.

Alternatively, petitioner contends that if it must include in taxable income all service contract receipts when received, then it is entitled to accrue and deduct the estimated costs that might be incurred to earn the service contract receipts.[5] We think this alternative issue is an attempt by petitioner to obtain indirectly what, in view of the Supreme Court's decision in *Automobile Club of Michigan* v. *Commissioner*, *supra*, we have held under the first issue petitioner could not obtain directly. Section 23 (a) (1) (A) of the Internal Revenue Code of 1939 provides that in computing net income there shall be allowed as deductions all the ordinary and necessary expenses "paid or incurred" during the taxable year in carrying on any trade or business. The deductions here sought were neither paid nor incurred during the taxable year for which they are claimed and are, therefore, not deductible. *Brown* v. *Helvering*, 291 U. S. 193.

A different situation exists in the fiscal year ended May 31, 1951. The respondent determined a net loss for that year which he allowed as an operating loss carryback deduction for the fiscal year ended May 31, 1950. In determining the net loss for fiscal 1951, the respondent added to income for that year an amount of $195,895.60 as income deferred. We have found that petitioner ceased to service television sets in May 1951 when Serv-All was organized. At that time, petitioner and Serv-All agreed that the latter would take over the unexpired portion of petitioner's service contracts and render all the service called for in such contracts in consideration of $195,895.60, which amount petitioner, as of May 31, 1951, accrued on its books as a liability in favor of Serv-All. Petitioner paid the amount in full during the following fiscal year. Petitioner did not report the $195,895.60 as income in its fiscal year ended May 31, 1951, but neither did it claim any deduction for the liability of the same amount, which liability it incurred in the fiscal year 1951. *Brown* v. *Helvering*, *supra*. We sustain the respondent in adding to income for fiscal 1951 the amount of $195,895.60, but we hold that petitioner is entitled to deduct from its gross income for that year a like amount. *Brown* v. *Helvering*, *supra*.

*Decision will be entered under Rule 50.*