SIMPLIFIED TAX RECORDS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 84145. Filed October 17, 1963.

*Stevens H. Weiss, Henry W. Steingarten,* and *Robert J. Wolpert,* for the petitioner.
*Stephen M. Miller,* for the respondent.

OPINION

The principal issue is whether respondent erred in disallowing a deduction for estimated future expenses of preparing subscribers' income tax returns which petitioner had claimed as a part of its cost of goods sold on its income tax returns for 1954 and 1956.

This is another of the plethora of cases coming before the courts in recent years involving the deferral of income or the accrual of expenses to cover the estimated cost of rendering services in the future. We think the issue here is controlled by the recent decisions of the Supreme Court in *Schlude* v. *Commissioner*, 372 U.S. 128 (1963), *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961), and *Commissioner* v. *Milwaukee & Suburban Transport Corp.*, 367 U.S. 906 (1961), which require a decision against the taxpayer herein. While it is true that the *Schlude* and *American Automobile* cases were concerned with the deferral of income rather than the deduction of estimated future expenses, the Court remanded the *Milwaukee & Suburban Transport* case, which did involve the deductibility of estimated expenses, "in the light" of the *American Automobile* case, and on remand the Court of Appeals for the Seventh Circuit vacated its prior decision permitting the deduction of anticipated damage claims and reinstated the decision of this Court denying such deduction on the authority of the *American Automobile* case. See *Milwaukee & Suburban Transport Corporation* v. *Commissioner*, 293 F. 2d 628 (C.A. 7, 1961). While it can be argued that there are technical distinctions in deferring prepaid income and deducting estimated future expenses in cases like this the net result is the same and we think the same principles of tax accounting and the Commissioner's authority should be applied to both techniques.[8] As said in *American Automobile Assn.* v. *United States*, *supra*, the prepaid dues were credited to a reserve "as deferred or unearned income reflecting an estimated future service expense to members."

In *Automobile Club of Michigan* v. *Commissioner*, 353 U.S. 180 (1957), the Supreme Court held that the taxpayer could not defer its membership dues ratably over the year for which they were paid because the pro rata allocation of dues in monthly amounts was "purely artificial" and bore no relationship to the services which the taxpayer in fact might be called on to render its members, and therefore the Commissioner had not abused his discretion in determining that taxpayer's system of accounting did not clearly reflect its income. In *American Automobile Assn.* v. *United States*, *supra*, under similar facts but with evidence that the pro rata deferral of income did cor-

---

[8] Compare secs. 451(a) and 461(a), and see sec. 446, I.R.C. 1954.

respond substantially with the cost and time of rendering services to its members, the Court said that, although it was admitted that the method used by taxpayer was in accord with generally accepted commercial and accounting principles, it failed to "respect the criteria of annual tax accounting and may be rejected by the Commissioner." The Court emphasized that the services were rendered solely upon a member's demand. It also discussed at length the enactment and repeal of sections 452 [4] and 462 [5] of the 1954 Code, which specifically permitted deferral of income and accrual of estimated future expenses, and the implications thereof, and concluded by saying, "Finding only that, in light of existing provisions not specifically authorizing it, the exercise of the Commissioner's discretion in rejecting the Association's accounting system was not unsound."

In its most recent decision in *Schlude* v. *Commissioner*, *supra*, the Court framed the question for decision as being, "Was it proper for the Commissioner, exercising his discretion under § 41, 1939 Code, and § 446(b), 1954 Code, to reject the studio's accounting system as not clearly reflecting income and to include as income in a particular year advance payments." The Court found the issue to be squarely controlled by *American Automobile Assn.* v. *United States*, *supra*, and answered the question in the affirmative. Again the Court discussed the implications of the repeal of section 452 of the 1954 Code, and the recent enactment of section 456, 1954 Code, and also emphasized that the taxpayer's system of accounting was artificial since the advance payments related to services which were to be performed only upon customers' demands without relation to fixed dates in the future.

---

[4] SEC. 452. PREPAID INCOME.

(a) PREPAID INCOME TO BE EARNED OVER SHORT OR INDEFINITE PERIOD.—

(1) SHORT PERIOD.—In the case of any prepaid income to which this section applies, if the liability described in subsection (e)(2) is (at the time the income is received) to end before the first day of the sixth taxable year after the taxable year in which such income is received, then such income shall be included in gross income for the taxable year in which received, and for each of the 5 succeeding taxable years, to the extent proper under the method of accounting used under section 446 in computing taxable income for such year. If the liability does not in fact end before the first day of such sixth taxable year, such income shall be included in gross income for the taxable years specified in the preceding sentence except that with the consent of the Secretary or his delegate it shall be included in gross income in such proportions, and for such taxable years, as are specified in such consent.

\* \* \* \* \* \* \*

'(e) DEFINITIONS.—For purposes of this section—

(1) PREPAID INCOME.—The term "prepaid income" means any amount (includible in gross income) which is received in connection with, and is directly attributable to, a liability which extends beyond the close of the taxable year in which such amount is received. Such term does not include any income treated as gain from the sale or other disposition of a capital asset.

(2) LIABILITY TO RENDER SERVICES, ETC.—The term "liability" means a liability to render services, furnish goods or other property, or allow the use of property.

[5] SEC. 462. RESERVES FOR ESTIMATED EXPENSES, ETC.

(a) GENERAL RULE.—In computing taxable income for the taxable year, there shall be taken into account (in the discretion of the Secretary or his delegate) a reasonable addition to each reserve for estimated expenses to which this section applies.

Whether these more recent decisions of the Supreme Court will lay these problems to rest is problematical because the Court speaks in broad terms and it is not always clear just what the fundamental bases for the decisions are—hence other cases may be distinguished. See *Automobile Club of New York* v. *Commissioner*, 304 F. 2d 781 (1962), affirming 32 T.C. 906 (1959), wherein the Court of Appeals for the Second Circuit, while relying on *American Automobile Assn.* v. *United States*, *supra*, to hold against the taxpayer, distinguished its own prior decision in favor of the taxpayer in *Bressner Radio, Inc.* v. *Commissioner*, 267 F. 2d 520 (1959), reversing and remanding 28 T.C. 378 (1957).[6]

But in any event we think these recent decisions of the Supreme Court are clearly dispositive of the issue in this case on narrower and more specific grounds. Here the petitioner changed its long-established treatment of these expenses in 1954; the services which would give rise to the expenses were to be rendered only on the demand of the subscribers; and petitioner's method of estimating expenses was purely artificial and bore no relationship to the actual expenses incurred in rendering the services in the subsequent years. All of these factors have been specifically mentioned by the Court in the above cases in disallowing deferral of income to cover the estimated cost of future expenses.

There can be no question that the first two factors mentioned above were present here. And the latter factor is well established by the petitioner's experience. In 1954 it established a reserve for the estimated cost of preparing subscribers' returns for only 1 year, although the contract obligated it to prepare them for 2 years. The actual cost of preparing returns in 1955 exceeded the reserve established. Then in 1956 petitioner not only changed its method of computing a reserve, estimating it on the basis of the cost of preparing returns for 2 years instead of 1, but also changed the method of having the returns prepared; it began preparing the returns itself instead of having

[6] We suspect, because of its repeated emphasis on the Commissioner's discretion under sec. 41 of the 1939 Code and sec. 446 of the 1954 Code, and the legislative history of secs. 452 and 462, that the majority of the Supreme Court stand for the principle that, absent statutory sanction for it, unless the taxpayer can show that the Commissioner clearly abused his discretion in disallowing deferral of prepaid income or accrual of estimated future expenses, this exercise of the Commissioner's discretion will not be disturbed by the Court even though the taxpayer's method of accounting is in accord with generally accepted principles of commercial accounting. We also suspect that this principle, if such it be, will meet with some resistance in the courts. See the dissenting opinions of Mr. Justice Stewart in *American Automobile Assn.* v. *United States*, 367 U.S. 687, 698 (1961), and *Schlude* v. *Commissioner*, 372 U.S. 128, 137 (1963), and the opinions of various Courts of Appeals in *Bressner Radio, Inc.* v. *Commissioner*, 267 F. 2d 520 (C.A. 2, 1959), reversing and remanding 28 T.C. 378 (1957), *Beacon Publishing Co.* v. *Commissioner*, 218 F. 2d 697 (C.A. 10, 1955), reversing 21 T.C. 610 (1954), *Schuessler* v. *Commissioner*, 230 F. 2d 722 (C.A. 5, 1956), reversing 24 T.C. 247 (1955), and *Pacific Grape Prod. Co.* v. *Commissioner*, 219 F. 2d 862 (C.A. 9, 1955), reversing 17 T.C. 1097 (1952). The application of such a principle to the facts here would certainly require a decision for respondent on this issue.

accountants prepare them, which would seem necessarily to change the cost of preparing them. Also its actual cost of preparing returns in 1957 was far in excess of the amount set up in its reserve for 2 years' returns.

Petitioner's reliance on such cases as *Schuessler* v. *Commissioner*, 230 F. 2d 722 (C.A. 5, 1956), reversing 24 T.C. 247 (1955); *Pacific Grape Prod. Co.* v. *Commissioner*, 219 F. 2d 862 (C.A. 9, 1955), reversing 17 T.C. 1097 (1952); and *Denise Coal Co.* v. *Commissioner*, 271 F. 2d 930 (C.A. 3, 1959), affirming in part and reversing in part 29 T.C. 528 (1957), is misplaced. Whether or not those cases are all distinguishable from the *American Automobile* and *Schlude* cases, they are all distinguishable from this case. In each of those cases the "operative facts" which gave rise to the future expenses had occurred in the year of accrual; in *Schuessler* the furnaces had been installed and there was a fixed obligation to turn them on and off; in *Pacific Grape Products* the fruit had been sold and there was a fixed obligation to pack and ship the merchandise to the customers; and in *Denise* the land had been stripped and there was a statutory obligation to rehabilitate the land. But here, as in the *Automobile Club* cases and the *Schlude* case, the operative facts which gave rise to the obligation, i.e., the demands by the subscribers for the service, had not occurred in the years of accrual. Where the operative facts giving rise to the future expenses have not occurred in the year of accrual, the estimated expenses cannot be deducted even though they can be estimated with reasonable certainty and even though prudent business requires that a reserve be set up. *Brown* v. *Helvering*, 291 U.S. 193 (1934).

We conclude that respondent did not err in disallowing the deductions claimed by petitioner on its returns for 1954 and 1956 for additions to reserves for estimated future expenses of preparing subscribers' income tax returns.

Our conclusion above makes it unnecessary for us to decide whether petitioner's change in its method of treating these expenses constituted a change in its method of accounting, which would require the consent of the Commissioner, or was merely a correction of the prior erroneous treatment of these expenses under the accrual method of accounting, as claimed by petitioner. See *American Can Co.*, 37 T.C. 198 (1961), affirmed in part and reversed in part 317 F. 2d 604 (C.A. 2, 1963).

*Decision will be entered for the respondent.*