Louie L. Harris and Elsie M. Harris v. Commissioner.
Harris v. Commissioner
Docket No. 4673-67.
United States Tax Court
T.C. Memo 1969-113; 1969 Tax Ct. Memo LEXIS 183; 28 T.C.M. (CCH) 600; T.C.M. (RIA) 69113; June 5, 1969, Filed *183 Held: An estimate for future contingent liabilities was improperly accrued and deducted as an expense in the year it was added to a reserve account. Simplified Tax Records, Inc. [Dec. 26,361], 41 T.C. 75 (1963), followed. Held, further: Expenses actually incurred in 1964 are deductible even though petitioners erroneously accrued and deducted said amounts prior to 1964. Kenosha Auto Transport Corporation, 28 T.C. 421 (1957), acq. 1957-2 C.B. 5, followed. Louie L. Harris, pro se, 3628 Mockingbird Lane, Dallas, Tex. Harold L. Cook, for the respondent. IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: The Commissioner determined a deficiency in petitioners' income tax of $1,397 for the year 1964. The issues left to be resolved are whether the sole proprietorship operated by petitioners was entitled to a deduction of $5,574.50 as an accrued expense for research to be performed for its customers, or, if not, whether $2,516.50 expended in 1964 for such research may be deducted in that year. Resolution of these 601 issues will determine the propriety of respondent's recomputation of petitioners' deduction for medical expenses, which recomputation is also in dispute. Findings *184 of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioners Louie L. Harris (hereinafter sometimes referred to as Louie) and Elsie M. Harris (hereinafter sometimes referred to as Elsie), are husband and wife who resided in Dallas, Tex., at all times material hereto. They filed their income tax return for 1964 with the district director of internal revenue in Dallas, Tex.
Petitioners began operation of a business known as Tesco Associates (hereinafter Tesco) in November 1961. It was a sole proprietorship which made retail sales of educational materials. Tesco's primary products were a two-volume unabridged dictionary and a world atlas which were normally sold under an installment sales contract along with other items. Pursuant to the sales contract, Tesco's customers received a certificate which entitled them to a ten-year membership in a research service and the privilege of buying a yearbook each year for ten years. Customers were required to pay an annual service charge of 75 cents each year, which was less than the cost of the yearbooks to Tesco. This service charge was taken into sales when received. Only holders of the certificates and their *185 immediate families were eligible for the research service. Such persons were entitled to submit not more than one question or request per month for the ten-year period. The material requested was to be of a factual nature which is ordinarily treated in general reference works. According to the certificate, the reference service would refuse to answer questions which called for the expression of an opinion or advice on legal, medical, personal or investment problems or the solution to puzzles or contests. A typical response to proper requests would be a three-page or four-page typewritten report. The research generally was performed by persons with masters degrees, such as professional librarians or other people with interests in the corresponding areas. Many reports were researched and prepared by petitioner Elsie. Tesco's average cost for these reports was about $3 to $3.25. Typically, Tesco's sales contracts called for the payment of $94 which included $5 for transportation and handling, in addition to the 75 cents per year as the yearbook service charge. Customers normally paid $14 down and $8 every month thereafter until the $94 was paid. Customers would also pay a service fee *186 of 80 cents each month. The contract provided that the research service and yearbook could be continued after the ten-year period at the purchaser's option for $30 per year. Tesco's records were maintained on the accrual basis of accounting and Tesco reported its income and expenses for Federal income tax purposes on the accrual basis. Tesco's records reveal that its customers purchased 100 yearbooks in 1963, 107 in 1964, and 135 in 1965. With the aid of a certified public accountant in December 1961 Tesco set up an account on its books titled Reserve for Research and Yearbook Expense. This account was used for anticipated costs of the research service and the loss on yearbooks to be furnished to customers pursuant to the above-described certificate. Louie estimated this amount for each of the years 1961, 1962 and 1963 by multiplying the number of new, valid contracts issued each year by $5. At the end of 1964 Tesco used an estimate of $6 per contract in computing and accruing the amount of research and yearbook expense. There were no reliable figures on which to base this estimate, the estimate representing Louie's guess of Tesco's future costs. The Reserve for Research and Yearbook *187 Expense account on Tesco's books reflects the following: Date
Debit
Credit
Balance
12-31-61 Accrued
$ 180.00
$ 180.00
1962 Charged to Ac- count *
$ 263.85
12-31-62 Accrued
3,195.00
3,111.15
1963 Charged to Ac- count *
2,065.93
12-31-63 Accrued
2,726.50
3,771.72
1964 Charged to Ac- count *
2,516.50
12-31-64 Accrued
5,547.50
6,829.72 In addition, loss on yearbooks in the amount of $321.85 for 1964 was expensed through cost of sales in arriving at gross profit. In 1966 Tesco went out of business. Although petitioners had expected a decrease in the rate of research requests, they experienced an increase. Petitioners, however, have attempted to continue to honor 602 research requests pursuant to prior contracts. Also, they sold a small number of additional contracts in 1967. Nevertheless, petitioners have tried to phase out the research service partly by using prior reports where possible and by cutting down on the amount of service performed. The Commissioner disallowed the entire $5,574.50 for 1964 as "estimated future contingent expenses." Opinion Respondent's disallowance of Tesco's deduction for estimated future liabilities must be sustained. Section *188 461(a) [1] provides that allowable deductions "shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." Tesco was on the accrual basis of accounting during its existence from 1961 to 1966. Respondent's disallowance presumably was an implementation of its regulation providing: "Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Section 1.461-1(a)(2), Income Tax Regs.
Petitioners do not challenge the validity of this regulation. In fact, Louie testified that the actual amount of research expense to be incurred depended upon the number of requests and, in effect, that he could not estimate that number in advance with reasonable accuracy. He did not demonstrate any formula for making his estimate, and it appears that his figure of $6 per contract in 1964 was largely an arbitrary guess. Under these circumstances this issue is controlled by our holding in Simplified Tax Records, Inc., 41 T.C. 75 (1963). *189 There petitioner, an accrual basis taxpayer, sold an accounting service designed for small businesses. The service consisted of an accounting system, books, forms and supplemental records plus an agreement that the seller would prepare the income tax returns for the subscriber for two years upon request. To get his returns prepared the subscriber only had to submit an information sheet no later than February 1 each year. Petitioner, from 1943 to 1956, had an arrangement with an accounting firm to prepare the returns for a fixed fee per return. In 1954 petitioner estimated its cost of returns to be prepared in 1955. In 1956 it made the same type of estimate for 1957 although it planned to prepare the returns itself during 1957. These estimates were put into reserve accounts, and deducted in 1954 and 1956, respectively. In upholding the Commissioner's disallowance of these deductions, we reviewed various recent decisions of the Supreme Court [2] and concluded that they required a holding against the taxpayer, giving the following as the narrow grounds of our decision: Here the petitioner changed its longestablished treatment of these expenses in 1954; the services which would give rise *190 to the expenses were to be rendered only on the demand of the subscribers; and petitioner's method of estimating expenses was purely artificial and bore no relationship to the actual expenses incurred in rendering the services in the subsequent years. All of these factors have been specifically mentioned by the Court in the above cases in disallowing deferral of income to cover the estimated cost of future expenses. All of these factors save a change in the accounting method are present in the case at hand. As such they are sufficient to sustain a denial of Tesco's deduction for its contingent and estimated future expenses. [3] *191 Further, the factor in Simplified Tax Records, Inc., which distinguished that case from those on which the petitioner relied, and which also requires our holding for respondent on this issue, is the uncertainty of the expense in the year at issue. See 41 T.C. at p. 82, where we said: In each of those cases the "operative facts" which gave rise to the future expenses had occurred in the year of accrual * * *. But here, as in the Automobile 603 Club cases and the Schlude case, the operative facts which gave rise to the obligation, i.e., the demands by the subscribers for the service, had not occurred in the years of accrual. Where the operative facts giving rise to the future expenses have not occurred in the year of accrual, the estimated expenses cannot be deducted even though they can be estimated with reasonable certainty and even though prudent business requires that a reserve be set up. * * * This reasoning also distinguishes AndersonClayton Securities Corporation, 35 B.T.A. 795, 802-803 (1937), on which petitioners herein rely. Since we hold for respondent on the issue of deductibility of the reserve, petitioners argue that they are *192 entitled to deduct amounts actually expended for research during 1964. Thus, citing Kenosha Auto Transport Corporation, 28 T.C. 421 (1957), acq. 1957-2 C.B. 5, petitioners ask us to hold that they should be allowed to deduct Tesco's expenses actually incurred during 1964 even though they took erronous deductions for such expenses in prior years. Respondent does not deal with this issue or the cited case in any respect, although he seeks to have the deficiency determination sustained in full. There are no material differences between this case and Kenosha Auto Transport Corporation, supra. There the petitioner added to a reserve account its yearly estimates of its liability for cargo damages expected to be sustained during transport, and it deducted the amount of the estimates as an expense for the years 1946-1948. Petitioner sought to deduct all amounts actually incurred for the year in issue (1948) even though a portion thereof corresponded to the reserve which petitioner conceded was erroneously deducted. The statute of limitations had run for years prior to 1948. We held for petitioner in order to recognize the principle of the annual accounting period and the purposes of the statute *193 of limitations. [4] That decision controls our result here, and, therefore, we hold for petitioners. [5]
Decision will be entered under Rule 50. Footnotes
*. Actual amount expended each year for research expense.↩
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. Schlude v. Commissioner, 372 U.S. 128 (1963); American Automobile Assn. v. United States, 367 U.S. 687 (1961); Commissioner v. Milwaukee & Suburban Transport Corp., 367 U.S. 906↩ (1961).
3. Villafranca v. Commissioner, 359 F. 2d 849 (C.A. 6, 1966), affirming a Memorandum Opinion of this Court, also supports this conclusion. In that case an accrual basis taxpayer sold a number of hours of dancing instruction to be taught over a period of years. In the year of sale the taxpayer deducted an estimate set up as a reserve for future teaching expenses. The Commissioner's disallowance of the deduction was sustained.
4. See Crosley Corporation v. United States, 229 F. 2d 376, 379 (C.A. 6, 1956); Commissioner v. Mnockin's Estate, 184 F. 2d 89, 92 (C.A. 19, 1950). affirming 12 T.C. 744↩ (1949). 5. Lest it appear that our holding opens the shutters of the Code to a windfall for petitioners, it behooves us to indicate that sections 1311-1315 provide respondent with a remedy to protect against such situations. See Kenosha Auto Transport Corporation, supra at 425-426↩.